## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NORMA OLIVER,
THOMAS OLIVER,
Plaintiffs

v.

JOSEPH L. MICHAUD,
MATTHEW H. MICHAUD,
DOUGLAS H. SMITH,
ALYSSA L. PARENT,
STEVEN J. HART,
CHRISTINE FEENEY,
SARAH TAFT-CARTER,
BRIAN THOMPSON,
DANIELLE KEEGAN,
BRENDEN OATES,
Individually and in their official capacities,
RHODE ISLAND SUPERIOR COURT,
Defendants

CASE NO.

2:22-CV- 4408 JLB·KCD

JURY TRIAL DEMANDED



**FILED**

AUG 0 3 2022

Clerk, US District Court
Middle District of Florida
Fort Myers, Florida

**COMPLAINT FOR TORTIOUS CONDUCT**

Pursuant to FL Stat. Chapter 86, § 222.11, § 713.31, § 768.81, § 772.11, § 772.101 et seq.; RI Gen. Laws § 7-14-1 et seq., § 9-4-9, § 9-20-4, § 9-21-2, § 9-26-4, § 9-30-1 et seq., § 10-5-8, § 19-14.9-6, § 34-18-37; 11 U.S. Code § 362, 15 U.S. Code § 1673, 18 U.S. Code § 1341, § 1512, § 1956, § 1957, § 1961, § 1962, § 1964, 42 U.S.C. § 1983; the Constitution of Florida; and the U.S. Constitution, Plaintiff brings this complaint as a result of the defendants' tortious and criminal acts committed on many dates, the first of which began after September 1, 2014. "Plaintiff" and "Defendant" will mean both the singular and the plural in this complaint, but the term will be clarified with an associated name whenever necessary.

### JURISDICTION AND VENUE

This court has subject matter and personal jurisdiction pursuant to 28 U.S. Code § 1332 since litigants are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, and it has jurisdiction pursuant to 18 U.S. Code § 1964. Venue is proper according to 28 U.S. Code § 1391(b)(3).

## INTRODUCTION

In the process of attempting to collect a "debt" that is the result of a fraudulent judgment obtained in Massachusetts (hereinafter, "the fraudulent debt"), Defendant has ignored rules of procedure, the code of conduct, the law, and the U.S. Constitution and—in doing so—has managed to remove the rightful owner, Norma Oliver, of the condominium located at 116 Rocky Brook Way, Wakefield, Rhode Island, (hereinafter "the property") from its deed/title in a case that is still pending in Rhode Island state court (case number WC-2016-0053, allegedly filed February 3, 2016, and hereinafter "the RI case").   The defendants' grossly negligent acts and intentional misconduct have caused financial and psychological injury to Plaintiff.  As such, Defendant is liable for both compensatory and punitive damages.

This is an action for tortious conduct with the following causes:

- CONVERSION/CIVIL THEFT IN VIOLATION OF 15 U.S. CODE § 1673; FL STAT. § 222.11 AND § 772.11; AND RI GEN. LAW § 10-5-8
- VIOLATION OF RI GEN. LAW § 9-26-4, PROPERTY EXEMPT FROM ATTACHMENT
- VIOLATION OF R.I. GEN. LAW § 34-18-37, IMPROPER TERMINATION OF PERIODIC TENANCY
- WRONGFUL ATTACHMENT
- INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE
- VIOLATION OF CONSTITUTIONAL RIGHTS
- ABUSE OF PROCESS
- VIOLATION OF 11 U.S. CODE § 362, AUTOMATIC STAY DURING BANKRUPTCY
- NEGLIGENCE/VIOLATION OF RI GEN. LAW § 9-20-4 AND FL STAT. § 768.81
- VIOLATION OF FL STAT. § 713.31, FILING A FRAUDULENT LIEN
- ACTUAL FRAUD/CONCEALMENT
- CIVIL CONSPIRACY
- LIABILITY PURSUANT TO 42 U.S.C. § 1983
- VIOLATION OF RICO STATUTES FL STAT. § 772.101 ET SEQ., RI GEN. LAW § 7-14-1 ET SEQ., AND 18 U.S. CODE § 1962 AND § 1964 (in four distinct counts)
- INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

2

This is a *pro se* complaint entitled to a liberal reading and less stringent standards since it was prepared without the assistance of counsel. See *Haines v. Kerner, et al.*, 404 U.S. 519, 92 S. Ct. 594 (1972).

## COUNT ONE: CONVERSION/CIVIL THEFT IN VIOLATION OF 15 U.S. CODE § 1673; FL STAT. § 222.11 AND § 772.11; AND RI GEN. LAW § 10-5-8

1.  This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 1 Defendants").

2.  On or about April 5, 2022, the Count 1 Defendants caused the $1,500 monthly rental income due to plaintiff Thomas Oliver under the provisions of the existing lease for the property to be diverted away from him so that he now receives none of the rent money.

3.  Irrespective of the legitimacy of anything else related to the property, both state and federal laws limit the amount of income that can be garnished. Based on plaintiff Thomas Oliver's income, 15 U.S. Code § 1673(a)(2) and RI Gen. Law § 10-5-8 set the limit at $91.76 per month, and FL Stat. § 222.11 sets the limit at $0 per month.

4.  The Count 1 Defendants were notified by email—once on June 27, 2022, and again on July 5, 2022—and in filings in the RI case of garnishment law violations yet continue to convert monies due plaintiff Thomas Oliver and failed to return amounts already converted and have thus financially crippled him. As of today, no known (written) court order has issued that dictates rent moneys for the property should be so diverted. With regard to civil theft, FL Stat. § 772.11 allows for treble damages.

5.  As a direct and proximate result of conversion/civil theft of rent by the Count 1 Defendants, plaintiff Thomas Oliver has been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties. The Count 1 Defendants have also injured plaintiff Thomas Oliver in his business/employment in the amount of $1,500 per month since April 2022, the calculations for which are shown in exhibit "A."

6.  The Count 1 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

3

## COUNT TWO: VIOLATION OF RI GEN. LAW § 9-26-4, PROPERTY EXEMPT FROM ATTACHMENT

7.  Plaintiff incorporates by reference the allegations in paragraphs one through six.

8.  This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 2 Defendants").

9.  RI Gen. Law § 9-26-4(8)(ii) specifically says, "The entire wages or salary of any debtor due or payable from any employer, where the debtor has been the object of relief from any state, federal, or municipal corporation or agency for a period of one year from and after the time when the debtor ceases to be the object of such relief."

10. The Count 2 Defendants Alyssa L. Parent and Douglas H. Smith were made aware that plaintiff Thomas Oliver was receiving such relief because said plaintiff stated so in a motion filed in the RI case, which the Count 2 Defendants Alyssa L. Parent and Douglas H. Smith were served: "Just days ago I have been put on SNAP/food stamps. I am also on state medical aid and the Lifeline program." Evidence was attached to the motion showing that such relief had been ongoing since as early as January 5, 2022, and, in fact, predates 2016.

11. RI Gen. Law § 9-26-4(16) specifically says, "In addition to the exemptions herein, a debtor in bankruptcy may exempt an additional six thousand five hundred dollars ($6,500) in <u>any</u> assets" (emphasis added). Since the only major asset plaintiff Thomas Oliver owns is his vehicle—valued at approximately $1,129—and he is currently still litigating in the bankruptcy court, the Count 2 Defendants' seizure of rent payments has exceeded the amount allowable according to law by $5,371[1].

12. As a direct and proximate result of the violation of RI Gen. Law § 9-26-4 by Defendant, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," or $5,371, whichever is greater. He has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

---

[1] https://www.kbb.com/hyundai/accent/2009/gls-sedan-4d/?condition=fair&intent=trade-in-sell&mileage=150000&modalview=false&options=6466855%7ctrue&pricetype=trade-in&vehicleid=226661

13. The Count 2 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT THREE: VIOLATION OF R.I. GEN. LAW § 34-18-37, IMPROPER TERMINATION OF PERIODIC TENANCY

14. Plaintiff incorporates by reference the allegations in paragraphs one through thirteen.

15. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 3 Defendants").

16. While one notice from the Count 3 Defendants was received by Anthony Tortolano, the tenant renting the property, at "least three (3) months prior to the expiration of the occupation year," the one-year lease applicable to Mr. Tortolano does not expire until September 30, 2022, so instructing him to move before then violated this law. However, this notice amounts to nothing more than threats and harassment since the Count 3 Defendants have taken "ownership" of the property fraudulently.

17. As a direct and proximate result of the violation of RI Gen. Law § 34-18-37 by the Count 3 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A." Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

18. The Count 3 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

### COUNT FOUR: WRONGFUL ATTACHMENT

19. Plaintiff incorporates by reference the allegations in paragraphs one through eighteen.

20. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 4 Defendants").

21. The property is not liable to attachment because it provides approximately 50 percent of plaintiff Thomas Oliver's income, and since it has been levied and "sold," his income remains negative

and he remains in extreme poverty.  The Count 4 Defendants' act of attachment and "sale" violates 15 U.S. Code § 1673, RI Gen. Law § 9-26-4(8)(ii) and (16), and FL Stat. § 222.11 and has injured Plaintiff.

22. In a letter dated March 25, 2021, defendant Smith addressed plaintiff Norma Oliver as if the property is exclusively hers—because it truly is.  Defendant Smith knows that it is and states, "In accordance with our written request, the Constable has scheduled a Constable's Sale of your real estate at 116 Rocky Brook Way, Unit 26, South Kingstown, Rhode Island." He continues: "If you plan to pay this matter in full prior to the sale, you must do so at our office....."  Plaintiff Norma Oliver has never owed any debt—fraudulently obtained or otherwise—to the Count 4 Defendants and is not, and never was, obligated to pay any monies to the Count 4 Defendants.  The Count 4 Defendants have openly admitted that they are pursuing the wrong person to pay the fraudulent debt attributed to plaintiff Thomas Oliver.

23. Plaintiff Norma Oliver has been the sole owner of the property since July 2014 and well before defendants Parent or J. Michaud filed any pleadings whatsoever in the originating case in Massachusetts; therefore, the property is exempt from attachment.

24. As a direct and proximate result of the wrongful attachment of the property by the Count 4 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

25. The Count 4 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT FIVE: INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

26. Plaintiff incorporates by reference the allegations in paragraphs one through twenty-five.

27. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud,

Steven J. Hart, and Douglas H. Smith (the "Count 5 Defendants").

28. Plaintiff Thomas Oliver established a lease with a third party, Anthony Tortolano, beginning on October 15, 2020. In the lease, Mr. Tortolano is designated as tenant of the property, and plaintiff Thomas Oliver is designated as landlord. This relationship stated that rent for the property was to be paid to plaintiff Thomas Oliver on a monthly basis.

29. The Count 5 Defendants knew of this relationship because defendant Joseph L. and/or Matthew H. Michaud, defendant Steven J. Hart, and other operatives of the Count 5 Defendants left harassing and intimidating notes at the property and/or sent them by U.S. mail addressed to Mr. Tortolano, including, but not limited to, threatening personal eviction and possibly other legal action, causing Mr. Tortolano to send rent payments to the Count 5 Defendants or one of its operatives. As such, the Count 5 Defendants have deliberately interfered with the business relationship of plaintiff Thomas Oliver and Mr. Tortolano thus causing serious economic harm to Plaintiff.

30. As a direct and proximate result of the intentional interference with economic advantage by the Count 5 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

31. The Count 5 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT SIX: VIOLATION OF CONSTITUTIONAL RIGHTS

32. Plaintiff incorporates by reference the allegations in paragraphs one through thirty-one.

33. This count is against all defendants, but defendants Parent, Smith, J. Michaud, M. Michaud, and Hart are the "Count 6 Defendants."

7

34. Defendant Taft-Carter prevented Plaintiff Thomas Oliver from having a virtual hearing on his motion to dismiss the RI case because, according to her, the "protocol in effect" requires *pro se* litigants to have in-person hearings, but allows virtual hearings to litigants represented by counsel, which is a clear act of discrimination against a class, i.e., the class of *pro se* litigants, thus violating the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

35. The Count 6 Defendants have intentionally taken more of plaintiff Thomas Oliver's earnings than allowed by law.  The date the Count 6 Defendants first began these acts was on or about April 5, 2022.  The highest written law of the land, the U.S. Constitution, says in its Due Process Clause of the Fourteenth Amendment, "nor shall any State deprive any person of life, liberty, or property, without due process of law."  Since plaintiff Thomas Oliver's earnings have been constructively garnished without him being heard in the RI case—and garnished excessively—and without any known Rhode Island court order of garnishment, Plaintiff has been denied due process.

36. The Count 6 Defendants have also taken the property without plaintiff Thomas Oliver being heard in the RI case that necessitated this complaint and without having been previously litigated the fraud in the case that caused the fraudulent judgment to issue in the first place, and then later be entered in Rhode Island.  Both are additional violations of Plaintiff's right to due process.

37. Since plaintiff Thomas Oliver was never personally served in the RI case, title for the property is still legally in plaintiff Norma Oliver's name according to the U.S. Supreme Court in *Pennoyer v. Neff*, 95 U.S. 714 (1878): "This court now holds that, by reason of the absence of a <u>personal service</u>.....on the defendant, the [court] had no jurisdiction, its judgment could not authorize the sale of land in said county, and, as a necessary result, a purchaser of land under it obtained no title; that, as to the former owner, <u>it is a case of depriving a person of his property without due process of law</u>" (emphasis added).  Moreover, laws authorizing garnishment or other seizure of property of an alleged defaulting debtor require that[2]:

---

[2] *Mitchell v. W.T. Grant Co.*, 416 U.S. at 615–18 (1974) and at 623 (Justice Powell concurring).  See also *Arnett v. Kennedy*, 416 U.S. 134, 188 (1974) (Justice White concurring in part and dissenting in part).  Efforts to litigate

- the creditor furnish adequate security to protect the debtor's interest
- the creditor make a specific factual showing before a neutral officer or magistrate, not a clerk or other such functionary, of probable cause to believe that he is entitled to the relief requested, and
- an opportunity be assured for an adversary hearing promptly after seizure to determine the merits of the controversy, with the burden of proof on the creditor.

38. No known evidence shows that any of the above requirements have been met by Defendant. Again, Plaintiff has been denied due process.

39. "Only Washington, Connecticut, and Rhode Island authorize attachments without a prior hearing in situations that do not involve any purportedly heightened threat to the plaintiff's interests." *Connecticut v. Doehr*, 501 U.S. 1, 18 (1991). Continuing, the U.S. Supreme Court said, "[T]he procedures of almost all the States confirm our view that the Connecticut provision before us, by failing to provide a pre-attachment hearing without at least requiring a showing of some exigent circumstance, clearly falls short of the demands of due process." While *Connecticut* is not exactly on point because it concerned prejudgment attachment, the general spirit of the high court's unanimous decision is: the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution is not met when a property owner has his property attached before he has a chance to be heard in the court where such attachment is authorized—and more so when it is not even his property. Plaintiff Thomas Oliver has not yet been heard and has thus been deprived of due process, and plaintiff Norma Oliver has also been so deprived since her property has literally been stolen under the guise of "justice."

40. Notice must be given in a manner that actually notifies the person or that has a reasonable certainty of resulting in such notice.[3] The Count 6 Defendants were never assured that Plaintiff knew the property had been sold or was about to be. Plaintiff did not suspect that title to the property had been corrupted until April 2022. Indeed, with a hearing for plaintiff Thomas Oliver's motion to dismiss the RI case scheduled for June 15, 2022, Plaintiff did not expect anything detrimental to happen before then,

---

challenges to seizures in actions involving two private parties may be thwarted by findings of "no state action," but there often is sufficient participation by state officials in transferring possession of property to constitute state action and implicate due process.

[3] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Schroeder v. City of New York*, 371 U.S. 208 (1962); *Robinson v. Hanrahan*, 409 U.S. 38 (1972)

particularly since plaintiff Thomas Oliver also filed a motion to stay months earlier on October 27, 2021. Plaintiff's right to due process was violated since the Count 6 Defendants provided no notification to Plaintiff about the sale of the property on June 10, 2021, and "sold" the property. The plaintiffs' right was similarly violated when the Rhode Island Superior Court seemingly allowed said sale despite the motion to stay.

41. Apparently, Rhode Island is notorious for infringing upon citizens' right to due process, which is demonstrated by a case that sought class certification. "In sum, we are in general agreement with the district court's conclusion that Rhode Island has not provided judgment debtors whose property it permits creditors to seize unilaterally by writ of attachment with sufficient, defined procedural process to meet the requirements of the due process clause of the fourteenth amendment." *Rose Dionne, Etc., Plaintiff, Appellee, v. Gerard Bouley, Etc., Defendant, Appellant. Rose Dionne, Etc., Plaintiff, Appellant, v. Gerard Bouley, Etc., Defendant, Appellee*, 757 F.2d 1344 (1st Cir. 1985). Of crucial note in that matter, "The United States District Court for the District of Rhode Island, in a comprehensive opinion, *Dionne v. Bouley*, 583 F. Supp. 307 (1984), held that current procedures were constitutionally insufficient. It enjoined defendant Gerard Bouley, Chief Clerk of the District Courts of the State of Rhode Island, from issuing writs of attachment thereunder." The evidence shows that at least two such relevant writs have been issued by clerks of the Rhode Island Superior Court. On February 22, 2016, clerk Brian Thompson, defendant, issued one such writ, and on November 5, 2019, clerk Danielle Keegan, defendant, issued another. Therefore, such actions contravene rulings established by the United States District Court for the District of Rhode Island and have violated Plaintiff's right to due process.

42. As a direct and proximate result of the violation of the plaintiff's constitutional rights by the defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to

10

approximately $286,727.92 in interest and penalties.

43. Defendant severally and jointly is thus liable to Plaintiff as stated in paragraphs 135 and 136.

### COUNT SEVEN: ABUSE OF PROCESS

44. Plaintiff incorporates by reference the allegations in paragraphs one through forty-three.

45. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 7 Defendants").

46. "Under Rhode Island law, abuse of process 'arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or wrongful purpose for which it was not designed.'" *Ward v. Lotuff*, C.A. No. 09-357-ML, 3 (D.R.I. Nov. 2, 2009).

47. Assuming incorrectly for the moment that defendant Parent had a valid judgment against plaintiff Thomas Oliver and then entered that judgment in the Rhode Island courts, which she did, such legal proceeding would then have been done in "proper form." However, the Count 7 Defendants have violated the plaintiffs' constitutional rights, rules of procedure, various state and federal laws, and various elements of common law and have used the proceedings for an "ulterior or wrongful purpose" to attach and/or seize real property solely in plaintiff Norma Oliver's name and to wrongly garnish plaintiff Thomas Oliver's income. Moreover, the Count 7 Defendants have acted with malice and have not legally enforced any "judgment" against plaintiff Thomas Oliver.

48. As a direct and proximate result of abuse of process by the Count 7 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

49. The Count 7 Defendants severally and jointly are thus liable to Plaintiff as stated in

paragraphs 135 and 136.

### COUNT EIGHT: VIOLATION OF 11 U.S. CODE § 362, AUTOMATIC STAY DURING BANKRUPTCY

50. Plaintiff incorporates by reference the allegations in paragraphs one through forty-nine.

51. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 8 Defendants").

52. During any bankruptcy proceeding in the United States, an automatic stay is in effect that prevents the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the petitioner.  Plaintiff Thomas Oliver filed for bankruptcy on February 28, 2020.  The stay began on that day and continued through August 3, 2021.

53. On June 10, 2021, Ronald Russo, as an agent for the Count 8 Defendants, "sold" the property in violation of the stay in effect at the time.  The sale and corresponding deed are thus void as a matter of law.

54. As a direct and proximate result of the violation of the automatic stay by the Count 8 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

55. The Count 8 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

### COUNT NINE: NEGLIGENCE/VIOLATION OF RI GEN. LAW § 9-20-4 AND FL STAT. § 768.81

56. Plaintiff incorporates by reference the allegations in paragraphs one through fifty-five.

57. This count is against all defendants, but defendants Parent, Smith, J. Michaud, M. Michaud, and Hart are the "Count 9 Defendants."

58. The Rhode Island Superior Court was required, according to *Dionne*, to preclude issuance of writs by chief clerks—much less subordinate clerks—against alleged debtors. That court did no such thing but instead carelessly allowed at least two clerks to issue them against the property.

59. The Count 9 Defendants should have contacted Plaintiff Thomas Oliver by phone, text, or email to give notice of proceedings or, at a minimum, ask if process could be sent via one of these means to ensure it would be received. Plaintiff Thomas Oliver has provided his phone number and email address in various court records in several matters in many states and to which the Count 9 Defendants have access and/or have been a party. Rather than exercise due care by exhausting all means of communication to contact plaintiff Thomas Oliver, the Count 9 Defendants did not do so.

60. The defendants who are versed in law should be aware of statutes limiting garnishment of wages. Plaintiff Thomas Oliver made perfectly clear in many court filings to which the Count 9 Defendants were privy that his income bordered on the poverty line. The Count 9 Defendants wantonly ignored proper precautions before taking more of plaintiff Thomas Oliver's income than should have been taken, which is $0 according to FL Stat. § 222.11.

61. According to Rhode Island Superior Court rules of civil procedure and an email conversation plaintiff Thomas Oliver had with court personnel, out-of-state litigants are to be served process *in-person*, most likely to prevent this precise type of fiasco from occurring. No such service was ever made or, to the best of the plaintiffs' knowledge, ever attempted.

62. RI Sup. Ct. R. Civ. P. 4(m)(3) states, "The writ of attachment.....shall be submitted to the court with a motion for its issuance." Nothing in the docket reveals such a motion ever being submitted or heard. The vacated hearing of June 15, 2022, was never entered into the court docket nor was any motion to continue by defendant Smith ever recorded. Most likely, he moved the hearing originally scheduled for that date by simply phoning the court and asking for it to be moved to July 15, 2022, which was then rescheduled again because of an alleged conflict according to the chief clerk, defendant Oates, in

an email: the judge "will not be in Washington County during the week of July 15, 2022 [*sic*] as she has been assigned to a matter in Providence County that week." The hearing was then rescheduled for July 8, 2022, but was vacated again; however, this action was also never entered into the docket. One is left to wonder how many other important events have been omitted from the docket and/or short-circuited. The court has the duty to follow rules of procedure, the law, and the U.S. Constitution but has not done so.

63. RI Gen. Law § 9-4-9(a) requires that a *lis pendens* be filed in the town or city where property is situated whenever a legal action has been filed that concerns title to real estate. The Count 9 Defendants failed to file such a document. It is possible that the town of South Kingstown, Rhode Island, would have contacted Plaintiff about such a document had it been filed, which would have given Plaintiff notice in the very early stages of the RI case that things were amiss. The town has called Plaintiff on multiple occasions regarding the property, for example, when issues related to taxes have arisen.

64. Had the fraudulent judgment never been entered in the Rhode Island courts or a lien not been placed on the wrong property, Plaintiff would not have suffered harm. Upon information and belief, the Count 9 Defendants knowingly filed the fraudulent judgment and levied the wrong property.

65. As a direct and proximate result of the negligent acts by the defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

66. Defendant severally and jointly is thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT TEN: VIOLATION OF FL STAT. § 713.31, FILING A FRAUDULENT LIEN

67. Plaintiff incorporates by reference the allegations in paragraphs one through sixty-six.

68. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud,

14

Steven J. Hart, and Douglas H. Smith (the "Count 10 Defendants").

69. The lien(s) on the property caused by the Count 10 Defendants is(are) fraudulent in that the foreign judgment ultimately used to obtain the lien was fraudulently obtained. The lien has also been placed on real estate not owned by plaintiff Thomas Oliver and is therefore also fraudulent for that reason.

70. § 713.31(2)(b) and (c) are relevant with the latter stating: "[T]he lienor shall be liable to the owner or the defrauded party who prevails in an action under this subsection in damages, which shall include court costs, clerk's fees, a reasonable attorney's fee and costs for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging the lien, and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due."

71. As a direct and proximate result of the Count 10 Defendants filing a fraudulent lien, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

72. The Count 10 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT ELEVEN: ACTUAL FRAUD/CONCEALMENT

73. Plaintiff incorporates by reference the allegations in paragraphs one through seventy-two.

74. This count is against defendants Alyssa L. Parent, Joseph L. Michaud, Matthew H. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 11 Defendants").

75. "The statute does not define the phrase 'obtained by fraud.' Fraud is defined by nontechnical

15

standards and is not to be restricted by any common-law definition of false pretenses.  One court has observed, '[t]he law does not define fraud; it needs no definition; it is as old as falsehood and as versatile as human ingenuity.' *Weiss v. United States*, 122 F.2d 675, 681 (5th Cir. 1941), cert. denied, 314 U.S. 687 (1941).  The Fourth Circuit, reviewing a conviction under 18 U.S.C. § 2314, also noted that 'fraud is a broad term, which includes false representations, dishonesty and deceit.' See *United States v. Grainger*, 701 F.2d 308, 311 (4th Cir. 1983), cert. denied, 461 U.S. 947 (1983)."[4]

76. In the case in Massachusetts that gave rise to the fraudulent judgment entered in Rhode Island, rules of procedure, civil and criminal laws, the code of conduct, judicial canons, and the U.S. Constitution were not violated—they were obliterated.  Evidence revealing the sheer magnitude of the egregious behavior of many actors can be found at: www.stloiyf.com/evidence/letter.htm, but the webpage is also attached as exhibit "C."  A complaint plaintiff Thomas Oliver filed with the Department of Injustice that encompasses the fraud in the originating case and in his bankruptcy can be found at this link: www.stloiyf.com/complaint/complaint.htm, but the webpage is also attached as exhibit "D."[5]  See also chapter six in his second book, *Our American Injustice System*, which can be read at: www.oais.us.[6]

77. All the wrongdoing described in count nine, if done deliberately, constitutes fraud, if not conspiracy to commit fraud.  Evidence revealed during discovery should provide enlightenment.

78. Defendant J. Michaud's political connections with former U.S. Senator Scott Brown helped the level of fraud and corruption in the Massachusetts case that truly spawned this complaint reach astronomical levels.  Fraud by the Count 11 Defendants includes, but is not limited to, the following:

- On at least three occasions from 2005 to 2015, defendant J. Michaud contacted plaintiff Thomas Oliver's lawyers and—at least twice by his own admission—violated Massachusetts criminal law 268 § 13B in order to mislead and/or intimidate plaintiff Thomas Oliver's lawyers to withdraw and get one step closer to transforming a legitimate default judgment in plaintiff Thomas Oliver's favor into a fraudulent judgment in his client's favor.  Proof is provided in exhibit "C," and one example can be found here.

---

[4] https://www.justice.gov/archives/jm/criminal-resource-manual-1007-fraud
[5] *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991).  The complaint may include: (1) documents incorporated by reference in the complaint; and (2) facts taken on judicial notice. *Pungitore v. Barbera*, No. 12-1795-cv, 2012 WL 6621437, at *2 (2d Cir. Dec. 20, 2012).
[6] https://www.amazon.com/Our-American-Injustice-System-Syndicate/dp/0996592970

- In September 2014, defendant J. Michaud phoned the Massachusetts court, which, as a favor to him, vacated the legally sound default judgment originally given to plaintiff Thomas Oliver merely as a result of receiving the phone call—a conspiracy in clear violation of the rules of procedure. Proof is provided in exhibit "C."

- In September 2014, *nearly nine years late*, defendants Parent and J. Michaud filed a fraudulent answer and counterclaim. Proof is provided in exhibit "C," and one example can be found here.

- The court "docket" in that case was contrived/manipulated several times with incorrect information and in favor of defendants J. Michaud and Parent, which is easily proved and reflected in the evidence in exhibit "C," and one example can be found here.

- Plaintiff Thomas Oliver was told in an email not to contact the court about the case and was denied a trial—clear violations of his constitutional rights. Proof is provided in exhibit "C."

- Hearings were held clandestinely. Proof is provided in exhibit "C," and one example can be found here.

- After defendant J. Michaud was appointed judge in 2018 and plaintiff Thomas Oliver had stated in many court filings that defendant J. Michaud had violated Massachusetts criminal law 268 § 13B, it magically changed so that he could not be prosecuted for several crimes he committed. Proof is provided in exhibit "C" in the "Who Are the Good Guys, and Who Are the Bad Guys?" section.

- After being the beneficiary of the judgment and likely viewing it as a "free lunch" but knowing full well that it was fraudulent, defendant Parent, allegedly through her then-counsel, entered it as a foreign judgment in the Rhode Island Superior Court, allegedly on February 3, 2016.

- Sometime during the period from March 1, 2020, and May 30, 2020, defendant J. Michaud contacted the bankruptcy court and, as a legally disinterested party, interfered with justice by lying to someone in the U.S. trustee's office in order to block the discharge of plaintiff Thomas Oliver's "debt." Seven forms of evidence that prove he made contact are given in paragraph ninety-nine on page twenty-four and in exhibit "D."

- On or about March 25, 2021, defendant Smith allegedly sent a letter to plaintiff Norma Oliver informing her that a sale of the property was planned—despite knowing that she owed no debt to him or defendant Parent and that the property was solely in plaintiff Norma Oliver's name.

79. As a direct and proximate result of the Count 11 Defendants committing fraud, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in

interest and penalties.

80. The Count 11 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

### COUNT TWELVE: CIVIL CONSPIRACY

81. Plaintiff incorporates by reference the allegations in paragraphs one through eighty.

82. This count is against all defendants, but defendants Parent, Smith, J. Michaud, M. Michaud, and Hart are the "Count 12 Defendants."

83. Regarding the first rescheduling of the June 15, 2022, hearing, the chief clerk, defendant Oates, indicated that the change was made "by Justice Taft-Carter." In an email that was forwarded to plaintiff Thomas Oliver, however, defendant Taft-Carter provided conflicting information when she said, "As I understand it [defendant Smith's] request for a continuance was made through the clerk's office."

84. On June 10, 2021, nearly two full months before the automatic stay terminated in plaintiff Thomas Oliver's bankruptcy, the Count 12 Defendants, through their agent, "sold" the property in violation of 11 U.S. Code § 362. For the Count 12 Defendants to make such a bold maneuver, it is likely that they were informed of the fraudulent denial of the discharge of plaintiff Thomas Oliver's "debt" weeks before it even happened on August 4, 2021, and were thus told of the bankruptcy's predetermined outcome. Plaintiff requests that judicial notice of this fact be taken.[7]

85. As apparent in the court record of the RI case, events have been driven in favor of the Count 12 Defendants. Such events include, but are not limited to: a probable telephonic communication to move the original June 15, 2022, hearing because defendant Smith most likely forgot about it, coordination of issuing writs without submission of accompanying motions, creation of a docket that omits information, and allowing the case to continue in the Rhode Island Superior Court despite in-person service being absent upon Plaintiff.

---

[7] "In addition, the [c]ourt may 'take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned.'" *Id.* (quoting *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017))." *Economan v. Cockrell*, Case No. 1:20-CV-32, 11 (N.D. Ind. Nov. 23, 2020)

86. Since it is difficult to identify all the culprits in a conspiracy and equally challenging to uncover all the evidence, the discovery phase will be crucial to this case, particularly since Plaintiff cannot see the contents of everything that has been recorded, or has failed to have been recorded, in the court "docket."

87. As a direct and proximate result of the civil conspiracy among the Count 12 Defendants, the other defendants, and certain others, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

88. Defendant severally and jointly is thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT THIRTEEN: LIABILITY PURSUANT TO 42 U.S.C. § 1983

89. Plaintiff incorporates by reference the allegations in paragraphs one through eighty-eight.

90. This count is against defendants Parent, Smith, Oates, Taft-Carter, Feeney, Thompson, Keegan (the "Count 13 Defendants").

91. The Count 13 Defendants violated the civil rights of Plaintiff while acting under color of "statute, ordinance, regulation, custom" when:

- clerks issued writs of attachment on the property in direct violation of the federal court ruling in *Dionne*, thus violating due process
- clerks failed to record properly in the docket events in the RI case—a basic duty of a clerk—raising the concern about how much of the RI case has been short-circuited and, furthermore, preventing Plaintiff from ascertaining what is really happening, thus violating due process
- the chief clerk, defendant Oates, and the judge, defendant Taft-Carter, provided plaintiff Thomas Oliver with conflicting information regarding the first rescheduling of the June 15, 2022, hearing, with each blaming the other for the rescheduling and that hearing ultimately not being held, thus violating due process
- Plaintiff Thomas Oliver was prevented from having a virtual hearing on his motion to dismiss the RI case because, according to the judge, defendant Taft-Carter, the "protocol

in effect" requires *pro se* litigants to have in-person hearings, but allows virtual hearings to litigants represented by counsel, which is a clear act of discrimination against a class, i.e., the class of *pro se* litigants, thus violating equal protection

- Defendant Smith conspired with clerks and/or defendant Taft-Carter to move the June 15, 2022, hearing, most likely via a simple phone call and in clear violation of the rules of procedure and the rules of professional conduct, thus violating due process

- Defendants Smith and Parent did not furnish adequate security to protect the plaintiff's interest nor did they make a specific factual showing before a neutral officer or magistrate, not a clerk or other such functionary, of probable cause to believe that they are entitled to the relief requested, but instead conspired with court personnel in order to seize the property, thus violating due process

- the property was taken because of the actions of the Count 13 Defendants, despite plaintiff Thomas Oliver not yet being heard in the RI case, thus violating due process

92. Plaintiff Thomas Oliver made the Count 13 Defendants aware on many occasions that due process rights were being abridged, that the foreign judgment was fraudulent, that his income met the definition of extreme poverty, that the property did not even belong to him, and that he was on the verge of homelessness due to their improper conduct. By proceeding anyway, the Count 13 Defendants acted with reckless, willful, and wanton conduct.

93. Footnote 2 makes clear that "state officials" by their actions can "implicate due process," which the relevant defendants who are employed in the Rhode Island Superior Court—by their acts—have certainly done.

94. For the reasons given heretofore in this complaint, the Count 13 Defendants have deprived Plaintiff of the right of due process guaranteed under the Due Process Clause and the right of equal protection guaranteed under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, which renders the Count 13 Defendants liable under 42 U.S.C. § 1983.

95. As a direct and proximate result of the Count 13 Defendants' actions and liability pursuant to 42 U.S.C. § 1983, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly since April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to

approximately $286,727.92 in interest and penalties.

96. The Count 13 Defendants severally and jointly are thus liable to Plaintiff for violation of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Plaintiff seeks compensatory damages for the Count 13 Defendants' violations of said clauses that the Count 13 Defendants violated when they wrongfully and unlawfully failed to maintain the court docket, provided conflicting scheduling information, issued writs improperly, prevented a virtual hearing, and failed to take adequate precautions to prevent title of the property from being corrupted (i.e., the property was "sold") in disregard of the governing case law and aforementioned constitutional provisions. Plaintiff also seeks an award of punitive damages in the amount of $175,000 in order to punish the Count 13 Defendants $25,000 per person for their reckless, willful, and wanton conduct with respect to disregarding the plaintiffs' right to due process and equal protection and violating such rights and to deter such reckless, willful, and wanton conduct in the future.  The specifics of this paragraph including additional relief sought are further elaborated in paragraphs 135 and 136.

## COUNT FOURTEEN: VIOLATION OF RICO STATUTES FL STAT. § 772.101 ET SEQ., RI GEN. LAW § 7-14-1 ET SEQ., AND 18 U.S. CODE § 1962 AND § 1964

97. Plaintiff incorporates by reference the allegations in paragraphs one through ninety-six.

98. RICO statutes were designed to fight organized crime.  Many acts related to this complaint and the actors involved easily fall into the category of organized crime.  The first related criminal acts began in September 2014, and the latest are known to have occurred in July 2022.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

99. Elements common to all RICO violations are described in this section.  Such elements include: culpable persons who acquired or maintain, directly or indirectly, any interest in or control of or are employed by or associated with any "enterprise" affecting interstate commerce through a "pattern" of "racketeering activity."  Relevant crimes that constitute "racketeering activity" as defined by 18 U.S. Code § 1961(1)(B) and committed by culpable defendants are best illustrated in this table:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| section 1341 (relating to mail fraud) | | Hart | | M. Michaud | J. Michaud | | Parent | Smith | | |
| section 1512 (relating to tampering with a witness, victim, or an informant) | | | | | J. Michaud | | | | | |
| section 1951 (relating to interference with commerce, robbery, or extortion) | Feeney | Hart | Keegan | M. Michaud | J. Michaud | Oates | Parent | Smith | Taft-Carter | Thompson |
| section 1956 (relating to the laundering of monetary instruments) | | Hart | | M. Michaud | J. Michaud | | Parent | Smith | | |
| section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) | | Hart | | M. Michaud | J. Michaud | | Parent | Smith | | |
| any offense involving fraud connected with a case under title 11 | | | | M. Michaud* | J. Michaud | | Parent* | Smith* | | |

As can be seen from this table, all defendants have negatively impacted commerce between plaintiff Thomas Oliver and third party tenant, Anthony Tortolano. Several are responsible for mail fraud, laundering of monetary instruments, and acts related to monetary transactions of the property as derived from unlawful activity. And one is known to be responsible for fraud connected with a title 11 case and for violating 18 U.S. Code § 1512(c)(2) on at least two different occasions. Those marked with "*" could also be responsible, but discovery will be required in order to determine their level of involvement, if any. According to 18 U.S. Code § 1961(1)(D), "any offense involving fraud connected with a case under title 11" qualifies as "racketeering activity." And according to § 1961(1)(B), so does "section 1341 (relating to mail fraud)," "section 1512 (relating to tampering with a witness, victim, or an informant)," "section 1951 (relating to interference with commerce, robbery, or extortion)," "section 1956

22

(relating to the laundering of monetary instruments)," and "section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity)."

***Culpable Persons/Co-Conspirators.***

Joseph L. Michaud is perhaps the kingpin who orchestrated everything from the very beginning. His crimes date back to September 2014 and include perjury, fraud, conspiracy to commit fraud, obstruction of justice, withholding/falsifying/manipulating evidence, falsifying documents, and committing certain Massachusetts state crimes—one of which has been changed so that it is no longer a crime and he cannot be prosecuted for it. This change was "coincidentally" made soon after his appointment as judge and plaintiff Thomas Oliver had repeatedly revealed this crime in several court documents and in various complaints to external entities. The extent of his relevant criminal and other offenses prior to 2020 can be found at www.stloiyf.com/evidence/letter.htm, which is also attached as exhibit "C." Michaud's role was also to establish a secondary association-in-fact enterprise with the defendants. This species of enterprise only need have—which the instant case does—"a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). One of the most common forms of racketeering is the protection racket, in which a criminal entity causes a problem and then sells protection against that problem. Michaud and Parent caused the problem of seizing the property via the fraudulent judgment they helped to create for themselves in Massachusetts and then sold protection against that problem in the form of extorting Plaintiff to pay to resolve that problem. This problem began in Massachusetts and continued across state lines into Rhode Island. Michaud also contacted someone in the U.S. trustee's office circa March 2020 in order to illegally block the discharge of the fraudulent debt he helped create. At least seven forms of evidence exist in the court record from Thomas Oliver's bankruptcy that Michaud phoned or otherwise contacted the U.S. trustee's office in order to thwart justice:

- illegal quashing of Thomas Oliver's subpoena for phone records comprising number and duration of each call *only*

- falsification of court records by third parties, one of which said that Thomas Oliver only asked for phone records and omitted "and of any other communication from or to [Smith and Michaud]" because falsifying that particular record tried to hide the fact that the attorney for the U.S. trustee lied (and perjured herself) in other written records when she said that no such communication existed with Smith—which contradicted evidence she inadvertently provided that proved it did

- after filing multiple complaints with the OIG, the letter Thomas Oliver received from that agency implying that trial attorneys rarely, if ever, attend 341 meetings, indicated there was an ulterior reason the attorney was at the meetings

- the email from the private trustee, Gerald H. Davis, saying that trial attorneys almost never attend 341 meetings, confirming again that circumstances outside of justice prompted attendance

- the evidence the lawyer for the U.S. trustee inadvertently sent Thomas Oliver that proves she communicated with Smith despite her false statement in her response to production of documents that no such communication existed

- the only party that didn't get involved in the bankruptcy case is the only one that Thomas Oliver listed as a "creditor"/criminal on his initial schedules: Parent—most likely because Smith, her attorney, was told by Michaud, "Don't worry; I will make a call and take care of all this, so don't waste your time"

- many others who confused Thomas Oliver with someone who has a similar name went kicking and screaming to prevent the discharge, but the *only* entity Thomas Oliver listed in his schedules—Parent—didn't make a peep, i.e., never appeared in the bankruptcy

Michaud has actively participated in the primary "enterprise," which is the Rhode Island Superior Court in Washington County, by leaving notes at the property, likely collecting some of the rental income, and more.

Alyssa L. Parent's role is as an enabler. Her false testimony, perjury, and prior actions allowed Michaud to begin racketeering and his association-in-fact enterprise. Michaud represented Parent in the original Massachusetts case when he was an attorney. She added fuel to the fire, so to speak, that allowed a legitimate judgment Thomas Oliver obtained against her and her then-business to be converted into an illegitimate judgment against him through fraudulent processes that included perjury, fraud, conspiracy to commit fraud, obstruction of justice, withholding/falsifying/manipulating evidence, falsifying documents, and violations of certain Massachusetts state crimes. It is the illegitimate judgment she received that has been entered at the "enterprise;" therefore, she has conducted business at the primary "enterprise." She is directly responsible for section 1341, 1951, 1956, and 1957 violations.

24

Douglas H. Smith is the attorney who is trying to collect the fraudulent debt in Rhode Island and who does business at the primary "enterprise." He has violated the Constitution, several rules of procedure, and various laws such as those related to theft and conversion in addition to the predicate offenses in the above table. He has knowingly tried to collect the fraudulent debt and is directly responsible for section 1341, 1951, 1956, and 1957 violations.

Brenden Oates is chief clerk of the primary "enterprise." He should be responsible for maintaining the docket, overseeing the case, and other things chief clerks typically do. He has provided information regarding the scheduling of the June 15, 2022, hearing that conflicts with what the judge has provided. It is not known yet if he has directly violated any governing criminal law other than being an accessory to the section 1951, 1956, and 1957 violations.

Sarah Taft-Carter is a judge of the "enterprise" and is presiding over the RI case. She has refused Thomas Oliver a virtual hearing because he is *pro se* and "protocol"—not a statute or any official rule of court—precludes it. She has provided information regarding the scheduling of the June 15, 2022, hearing that conflicts with what the chief clerk has provided. It is not known yet if she has directly violated any governing criminal law other than being an accessory to the section 1951, 1956, and 1957 violations.

Brian Thompson is a junior clerk of the "enterprise" who issued one known writ against the property in violation of governing law. It is not known yet if he has directly violated any governing criminal law other than being an accessory to the section 1951, 1956, and 1957 violations.

Danielle Keegan is a junior clerk of the "enterprise" who issued one known writ against the property in violation of governing law. It is not known yet if she has directly violated any governing criminal law other than being an accessory to the section 1951, 1956, and 1957 violations.

Christine Feeney is a clerk or other subordinate at the "enterprise" who allegedly works in close association with Sarah Taft-Carter. It is not known yet if she has directly violated any governing criminal law other than being an accessory to the section 1951, 1956, and 1957 violations.

Matthew H. Michaud is, or at one point was, a "trustee" of a trust known as the "FUBAR Realty Trust." He most likely has some familial relationship with Joseph L. Michaud, but his role in the

organization has apparently been to help transfer the property's ownership and launder money. He is directly responsible for section 1341, 1951, 1956, and 1957 violations.

Steven J. Hart appears to be an attorney and one of the people who harassed and intimidated the tenant residing at the property. He violated Rhode Island statutory law and was a major player with respect to conversion of rent payments from the tenant at the property. He has likely profited from the primary "enterprise" since a notice from him terminating tenancy was found by the tenant of the property and Hart allegedly represents Matthew H. Michaud. It is not known yet if he has directly violated any governing criminal law other than being directly responsible for section 1341, 1951, 1956, and 1957 violations.

**Enterprise**. RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Courts have interpreted the term "enterprise" very broadly, and since circuits have ruled that "a court can be an enterprise for the purposes of RICO," the Rhode Island Superior Court is exactly that enterprise.[8] A court is supposed to follow its own rules and the laws set out for it by its legislature. With the Rhode Island Superior Court as the RICO enterprise, participants engaged in patterns of activities designed to corrupt the operation of the court's own processes, which are supposed to include correctly issuing writs, maintaining an accurate docket, eschewing bias, following rules, the law, and the Constitution, and more.

**Interstate Commerce**. The interstate commerce requirement is satisfied if either the activity of the enterprise or the predicate acts of racketeering affect interstate commerce. Both are true in this case. Litigants of the Rhode Island Superior Court frequently come from out of state to litigate their civil cases and are involved in commerce: paying filing fees, for example. The first known instance of racketeering that affected interstate commerce occurred in November 2015 when the lies, fraud, falsifying evidence/documents, and perjury of Michaud and Parent led to a legal judgment for Thomas Oliver being transformed into an illegal judgment for Parent, causing the payment of the judgment due to Thomas

---

[8] *Peia v. United States*, 152 F. Supp. 2d 226, 235 n.11a (D. Conn. 2001). See also *Averbach v. Rival Mfg.* Co., 809 F.2d 1016, 1018 (3d Cir. 1987) and others.

Oliver to not be sent from Massachusetts to California (section 1951 related). See www.stloiyf.com/evidence/letter.htm, which is also attached as exhibit "C." The second known instance of interstate commerce being affected by racketeering occurred on June 10, 2021, when the property was allegedly "sold" by a Rhode Island constable and "bought" by out-of-state defendant Parent who resides in Massachusetts (sections 1956, 1957 related). The third known instance of interstate commerce being affected by racketeering occurred in April 2022 when Thomas Oliver was precluded from paying the mortgage of the property and condominium fees due to the conversion/civil theft of the rent payment by Defendant (section 1951 related). This caused Thomas Oliver not to send the mortgage payment from New York to Massachusetts and not to send the condo fee from New York to Rhode Island. The third instance has been a pattern in and of itself since it has been ongoing every month since April 2022 despite a demand letter being sent to Defendant on July 1, 2022, demanding past due payments and damages from Defendant and directing Defendant to cease and desist.

*Racketeering Activity*. "Racketeering activity" is defined as any number of state and federal offenses which are enumerated in § 1961(1). The acts must be related and continuous to form a "pattern of racketeering." "Related" is defined as "acts that have the same or similar purposes, results, participants, victims, methods of commission, or otherwise interrelated by distinguishing characteristics and are not isolated events." As established in the previous paragraph, the acts are related and ongoing and have formed a pattern of racketeering, have a singular purpose of seizing the property, and have the same participants and victims. Continuity is both close-ended in terms of achieving "sale" of the property and open-ended because rent payments are still being converted, and the culpable persons/co-conspirators have shown no signs of discontinuing this criminal activity.

*Injury*. As per RICO's standing requirements, Plaintiff is a "person" who sustained injury to either his or her business or property—both in this case—"by reason of" defendant's violation of § 1962. Plaintiffs Thomas Oliver and Norma Oliver meet those requirements as shown in the balance of count 14-x.

_**Statute of Limitations**_. Claims by Plaintiff that have occurred recently in 2021 and 2022 will not be barred. Despite the first known occurrence of crime occurring in September 2014, a bankruptcy filed by plaintiff Thomas Oliver on February 28, 2020, that ended on August 4, 2022, tolled the statute of limitations for that period. Additionally, courts in several circuits have held that a continuing tort or conspiracy serves as grounds for equitable tolling in civil RICO cases. Courts in the First Circuit do. At least five separate but related legal actions have been spawned over the years as a result of the original Massachusetts case, which began in 2005, and crimes/torts committed by Defendant and relevant to RICO have been ongoing since 2014. Plaintiff Thomas Oliver's legal battles have effectively been one long tort in the fight against crime. Lastly, fraudulent concealment is another reason courts have allowed equitable tolling. Besides not knowing for more than four years about the RI case (Plaintiff did not know it existed until early in 2020), Plaintiff suspects there have been certain—but as yet to be determined—events and evidence that have been fraudulently concealed based on facts given in count eleven, which should be revealed during discovery.

**COUNT FOURTEEN-ONE**
**RICO § 1962(b)**

100.    Plaintiff incorporates by reference the allegations in paragraphs one through ninety-nine.

101.    This count is against defendant Joseph L. Michaud (the "Count 14-1 Defendant").

102.    The association-in-fact enterprise created by the Count 14-1 Defendant is engaged in and affects interstate commerce.

103.    The Count 14-1 Defendant acquired and maintains interests in and control of the association-in-fact enterprise through a pattern of racketeering activity. Specifically, he orchestrated the components of it by coordinating with others in order to obtain the original fraudulent judgment in Massachusetts through political connections, contacting the attorney for the U.S. trustee and interfering with the discharge of the fraudulent debt, threatening and intimidating the tenant of the property by leaving notes on the premises, by causing the conversion of rent money, while likely using the U.S. mail to accomplish much of his scheme—all of which affect interstate commerce.

28

104. The racketeering activity attributed to the Count 14-1 Defendant in the table above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

105. The Count 14-1 Defendant has directly and indirectly acquired and maintains interests in and control of the association-in-fact enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

106. As a direct and proximate result of the Count 14-1 Defendant's racketeering activities and violations of 18 U.S.C. § 1962(b)—acquisition or maintenance of an interest in, or control the association-in-fact enterprise—plaintiff Thomas Oliver has been forced to litigate at least five other cases, which have resulted in expenses, *significant* time expenditure, and tremendous stress and have occurred since establishment of the association-in-fact enterprise.

107. The Count 14-1 Defendant is thus liable to Plaintiff as stated in paragraphs 135 and 136.

## COUNT FOURTEEN-TWO
### RICO § 1962(c)

108. Plaintiff incorporates by reference the allegations in paragraphs one through 107.

109. This count is against defendants Joseph L. Michaud, Steven J. Hart, and Douglas H. Smith (the "Count 14-2 Defendants").

110. The Washington County Superior Court is an enterprise engaged in and whose activities affect interstate commerce. The Count 14-2 Defendants are associated with the enterprise.

111. The Count 14-2 Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically, they are responsible as indicated in the table in paragraph 99, along with its subsequent narrative, and in earlier counts, such as COUNT FIVE.

112. Pursuant to and in furtherance of their fraudulent scheme, the Count 14-2 Defendants committed multiple related acts of racketeering as shown in the table in paragraph 99, along with its subsequent narrative, and in earlier counts, such as COUNT FIVE.

113. The acts set forth in the table in paragraph 99, along with its subsequent narrative

29

beginning on page 26, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

114.    The Count 14-2 Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

115.    As a direct and proximate result of the Count 14-2 Defendant's racketeering activities and violations of 18 U.S.C. § 1962(c), plaintiff Thomas Oliver has been injured in his business and plaintiff Norma Oliver has been injured in her property in that the former is no longer receiving rent money he needs to survive and the latter has lost a major chunk of her estate.

116.    The Count 14-2 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

<h3 align="center">COUNT FOURTEEN-THREE<br>RICO § 1962(d)</h3>

117.    Plaintiff incorporates by reference the allegations in paragraphs one through 116.

118.    This count is against defendants Alyssa L. Parent and Matthew H. Michaud (the "Count 14-3 Defendants").

119.    The Count 14-3 Defendants agreed to the overall objective of the conspiracy and conspired to violate 18 U.S.C. § 1962(c). Specifically, defendant Parent agreed to have defendant Smith represent her in the scheme to enforce the fraudulent judgment. She also is responsible for several predicate acts: using the U.S. mail to communicate and/or transact with defendant Smith and/or J./M. Michaud in the process of defrauding Plaintiff, and buying and selling the property in which she has interfered with commerce, laundered money, and engaged in monetary transactions in violation of sections 1341, 1951, 1956, and 1957, respectively. Defendant M. Michaud, as alleged trustee of the FUBAR Realty Trust, agreed to purchase the property from defendant Parent. He also is responsible for several predicate acts: using the U.S. mail to communicate and/or transact with defendant Parent and/or Hart and/or J. Michaud in the process of defrauding Plaintiff, and buying the property in which he has interfered with commerce, laundered money, and engaged in monetary transactions in violation of

30

sections 1341, 1951, 1956, and 1957. The Count 14-3 Defendants intended "to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."[9]

120.    The Count 14-3 Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the affairs of the enterprise through a pattern of racketeering activity. The Count 14-3 Defendants knew that their acts contributed to a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962 (c), in violation of 18 U.S.C. § 1962(d).

121.    As a direct and proximate result of the Count 14-3 Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), plaintiff Thomas Oliver has been injured in his business since he is no longer receiving rent money he needs to survive, and plaintiff Norma Oliver has been injured in her property in that she has lost a major portion of her estate.

122.    The Count 14-3 Defendants severally and jointly are thus liable to Plaintiff as stated in paragraphs 135 and 136.

**COUNT FIFTEEN: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

123.    Plaintiff incorporates by reference the allegations in paragraphs one through 122.

124.    This count is against all defendants, but defendants Parent, Smith, J. Michaud, M. Michaud, and Hart are the "Count 15 Defendants."

125.    The Count 15 Defendants' conduct has been beyond outrageous since the true beginning of this legal nightmare—from violating ethical standards, rules of procedure, and civil laws to committing various crimes against Plaintiff that even involve a conspiracy network reaching across the nation. Most of the offenses can be found at www.stloiyf.com/evidence/letter.htm, which is also attached as exhibit "C." The offenses are so outrageous that plaintiff Thomas Oliver needed to write a second book as shown in footnote 6, and chapter 6 illustrates those offenses. He is in the process of giving the story to an Oscar-winning screenwriter whose father was a friend of the family because the facts and evidence are so wildly

---

[9] *Salinas v. United States*, 522 U.S. 52, 65 (1997).

ridiculous and worthy to be made into a movie.

126.    Thus far, Plaintiff has had to spend more than 11,000 painstaking hours on litigation related to this matter because of the defendants' actions. The defendants have intentionally inflicted—if not at least negligently inflicted—emotional and financial distress upon Plaintiff as a result of their tortious acts in the Count 15 Defendants' attempted collection of the fraudulent debt, and Plaintiff has suffered a great deal. The date the Count 15 Defendants first began these acts was after September 1, 2014, and continues to present day.

127.    Plaintiff has been under constant oppression by the Count 15 Defendants and various others, and although complaints have been filed with several oversight agencies, nothing remedial has been done, which has further increased stress levels. Additionally, plaintiff Thomas Oliver has been under tremendous emotional and financial distress due to the loss of a significant portion of income because of the defendants' actions, which are in violation of law as shown in the preceding counts.

128.    The Count 15 Defendants acted with malice or reckless indifference and committed extreme and outrageous acts, such as fraud to the highest degree. Specifically, they:

- know they obtained the judgment in Massachusetts fraudulently—resulting in the fraudulent debt
- know plaintiff Norma Oliver owned the property, and she owes no debt/financial obligation to them
- know plaintiff Thomas Oliver has been driven well into extreme poverty and has been forced to be put on the Lifeline program, SNAP/food stamps, and state medical assistance because of their actions

yet they proceeded with seizing the property anyway. Those defendants versed in law must have known they were violating several laws, but even if they were ignorant of existing relevant law, they were made aware of their transgressions via the demand letter that plaintiff Thomas Oliver sent them and via filings he submitted into the RI case, which they were served. Moreover, why would defendant J. Michaud and/or M. Michaud come from out of state and leave threatening notes at the property when he or they are not even a party to the RI case, unless he or they were acting maliciously? Note that defendant J.

Michaud is the former corrupt lawyer—now a judge—who played a major role in creating the fraudulent debt.....and who belongs in prison.

129.    Plaintiff Thomas Oliver has been forced to liquidate his retirement account in order to meet daily living expenses.  As a result, penalties and taxes will be due, which he cannot afford.  This is causing tremendous stress.

130.    Plaintiff Thomas Oliver has never missed a payment on anything—until April 2022.  The Count 15 Defendants' actions have forced him to stop paying the mortgage, taxes, insurance, and condo fees on the property.  His credit score was 818 before this long ordeal began in 2005 but has likely plummeted or will plummet because of his forced default on the mortgage and bankruptcy and related legal problems.  Plaintiff Norma Oliver's credit score will also likely be negatively affected for being the "responsible" party accountable for the fraudulent debt since the property was solely in her name when it was seized.

131.    As stated in several counts, Defendant failed to use proper care at many points in time since 2005 and was reckless with regard to giving notice, maintaining docket fidelity, preventing excessive garnishment, issuing writs, attaching the right property, and much more.  Discovery may reveal additional evidence that proves more of the Count 15 Defendants' actions were done intentionally to inflict emotional distress upon Plaintiff.  As a result of the defendants' conduct, Plaintiff has suffered severe emotional and financial distress.

132.    Individual defendants cumulatively make more than $500,000.00 per year but quite likely have income and/or assets that exceed $2,000,000.00.  These figures neglect the financial standing of the Rhode Island Superior Court, which significantly increases those numbers.  As such, punitive damages of less than six figures will not be appropriate since the financial impact upon Defendant will be insignificant.

133.    As a direct and proximate result of the defendants' actions described throughout this complaint, Plaintiff has been negatively impacted with regard to standard of living, financial reserve, emotional distress, time expenditure, and mental/physical well-being.

134.    Defendant severally and jointly is thus liable to Plaintiff as stated in paragraphs 135 and 136.

## DEMAND FOR JUDGMENT

135.    WHEREFORE, Plaintiff seeks declaratory judgment in the form of injunctive relief pursuant to RI Gen. Law § 9-30-1 et seq., FL Stat. chapter 86, and 42 U.S.C. § 1983 against defendant Taft-Carter to return the property to its rightful owner, Norma Oliver, and to forever bar co-defendants Joseph L. Michaud, Matthew H. Michaud, Alyssa L. Parent, Douglas H. Smith, Steven J. Hart and their heirs, successors, and assigns from bringing any legal proceeding against the property with regard to collection of alleged debts of plaintiff Thomas Oliver.  Plaintiff also seeks declaratory judgment in the form of injunctive relief against defendants Oates, Thompson, Keegan, and Feeney to be enjoined from issuing writs and directed to maintain court dockets and perform all tasks in accordance with their official duties.

136.    Lastly, Plaintiff seeks compensatory, punitive, and nominal damages as set forth in the following table, together with prejudgment interest at the prevailing rate set by law, court costs, fees, penalties imposed on Plaintiff, and any other relief or compensation deemed appropriate.[10]    In the alternative to injunctive relief against defendant Taft-Carter, the rightmost two columns of compensatory damages in the table are applicable.  "RISC" denotes "Rhode Island Superior Court" in the table.  Under compensatory damages, column 1 represents the $1,500 monthly rent or its triple, as applicable.  Column 2 represents the total taxes and interest due to early withdrawal of plaintiff Thomas Oliver's IRA, with column 3 being its triple.  Column 4 represents the equity plaintiff Norma Oliver has in the property ($198,377) combined with the 30-year loss of monthly rent ($1,128,567.36), with column 5 being its triple.

---

[10] Courts have ruled that punitive damages are available under RICO.  See *Com-Tech Assoc. v. Computer Assoc. Int'l*, 753 F Supp. 1078, 1079 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) (holding that claim for punitive damages could be asserted in civil action under RICO, even though treble damages are available).  See also *Sea Salt, LLC v. Bellerose, No. 2:18-cv-00413-JAW*, 10 (D. Me. Jun. 9, 2021) (where the court reasoned that "compensatory damages in the amount of $1,500,000, treble damages under the RICO Act, and punitive damages in the amount of $3,000,000" are viable).

| | | Compensatory | | | | Punitive | Nominal |
|---|---|---|---|---|---|---|---|
| | $1,500/mo | $286,727.92 | $860,183.76 | $1,326,944.36 | $3,980,833.08 | $250,000 | TBD |
| Count 1 | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>($4,500/mo) | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | | |
| Count 2 | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>(or $5,371) | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | | |
| Count 3 | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | | |
| Count 4 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | |
| Count 5 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | |
| Count 6 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | Feeney<br>Keegan<br>Oates<br>Taft-Carter<br>Thompson<br>RISC |
| Count 7 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | |
| Count 8 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | |
| Count 9 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | Feeney<br>Keegan<br>Oates<br>Taft-Carter<br>Thompson<br>RISC |
| Count 10 | | J. Michaud<br>M. Michaud<br>Parent | J. Michaud<br>M. Michaud<br>Parent | | J. Michaud<br>M. Michaud<br>Parent | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Smith<br>Hart | | Smith<br>Hart | | Smith<br>Hart<br>($54,691) | |
| Count 11 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | |
| Count 12 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | Feeney<br>Keegan<br>Oates<br>Taft-Carter<br>Thompson<br>RISC |
| Count 13 | | Feeney<br>Thompson<br>Keegan<br>Oates<br>Taft-Carter<br>Smith<br>Parent | | Feeney<br>Thompson<br>Keegan<br>Oates<br>Taft-Carter<br>Smith<br>Parent | | Feeney<br>Thompson<br>Keegan<br>Oates<br>Taft-Carter<br>Smith<br>Parent<br>($175,000) | |
| Count 14 | | | | | | | |
| Count 14-1 | | | | | J. Michaud<br>($1,950,000) | J. Michaud | |
| Count 14-2 | | | J. Michaud<br>Smith<br>Hart | | J. Michaud<br>Smith<br>Hart | J. Michaud<br>Smith<br>Hart | |
| Count 14-3 | | | H. Michaud<br>Parent | | H. Michaud<br>Parent | H. Michaud<br>Parent | |
| Count 15 | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | Feeney<br>Keegan<br>Oates<br>Taft-Carter<br>Thompson<br>RISC |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues raised in this complaint.

August 1, 2022

Norma Oliver, *pro se*
6920 Bernadean Blvd.
Punta Gorda, FL 33982
401-363-5570

Thomas Oliver, *pro se*
6920 Bernadean Blvd.
Punta Gorda, FL 33982
401-835-3035
tomscotto@gmail.com

When the legislative or executive functionaries act unconstitutionally, they are responsible to the people in their elective capacity.  The exemption of the judges from that is quite dangerous enough.  I know no safe depository of the ultimate powers of the society, but the people themselves. - **Thomas Jefferson**