**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

NORMA OLIVER,
THOMAS OLIVER,
Plaintiffs

v.

JOSEPH L. MICHAUD,                                CASE NO. 2:22-cv-468-JLB-KCD
MATTHEW H. MICHAUD,
DOUGLAS H. SMITH,
ALYSSA L. PARENT,
STEVEN J. HART,                                   JURY TRIAL DEMANDED
SARAH TAFT-CARTER,
BRIAN D. THOMPSON,
DANIELLE C. KEEGAN,
BRENDEN T. OATES,
CLAUDIA M. ABREAU,
JAMES D. SYLVESTER,
MICHAEL K. ROBINSON,
JOEL A. ROBINSON,
Individually and in their official capacities,
ROBINSON LAW ASSOCIATES, LLC,
Defendants

**AMENDED COMPLAINT FOR TORTIOUS CONDUCT**

Pursuant to FL Stat. Chapter 86, § 222.11, § 713.31, § 768.72, § 768.81, § 772.11, § 772.101 et seq.; RI

Gen. Laws § 7-14-1 et seq., § 9-4-9, § 9-20-4, § 9-21-2, § 9-26-4, § 9-30-1 et seq., § 10-5-8, § 19-14.9-6,

§ 34-18-37; 11 U.S. Code § 362, 15 U.S. Code § 1673, 18 U.S. Code § 1341, § 1512, § 1956, § 1957, §

1961, § 1962, § 1964, 28 U.S. Code § 1331, 42 U.S.C. § 1983; the Constitution of Florida; and the U.S.

Constitution, Plaintiff brings this complaint as a result of the defendants' tortious and criminal acts

committed on many dates, the first of which began after September 1, 2014.  "Plaintiff" and "Defendant"

will mean both the singular and the plural herein, but the term will be clarified with an associated name

whenever necessary.

**JURISDICTION AND VENUE**

"[T]he traditional justification for diversity jurisdiction is to minimize potential bias against out-of-state

parties." *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 991 (7th Cir. 2001) (citing *Guar. Trust Co. of N.Y. v.*

1

*York*, 326 U.S. 99, 111 (1945); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir.1990)). Diversity jurisdiction is meant to "open[] the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) (citations omitted) (reversing district court's finding that jurisdiction was lacking). The facts and evidence clearly show that plaintiff Thomas Oliver has suffered prejudice on many occasions in the Massachusetts state courts—and now apparently in the Rhode Island state courts.

The district court has subject matter jurisdiction pursuant to 28 U.S. Code § 1332 since litigants are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, and pursuant to 18 U.S. Code § 1964 because counts 14 to 16 involve RICO, and pursuant to 28 U.S. Code § 1331 because counts 1, 6, 8, and 13 involve other federal laws/constitutional issues. Litigants in this matter are residents of at least three different states.

**The Parties—Plaintiffs**

- Norma Oliver is a U.S. citizen residing and domiciled at 6920 Bernadean Blvd., Punta Gorda, FL.
- Thomas Oliver is a U.S. citizen residing and domiciled in the United States of America but not in Rhode Island or Massachusetts.

**The Parties—Defendants**

- Joseph L. Michaud is believed to be a U.S. citizen residing and domiciled at 31 Slades Farm Lane, South Dartmouth, MA.
- Matthew H. Michaud is believed to be a U.S. citizen residing and domiciled at 127 High Hill Road, North Dartmouth, MA.
- Douglas H. Smith is believed to be a U.S. citizen residing and domiciled at 140 Reservoir Avenue Providence, RI.
- Alyssa L. Parent is believed to be a U.S. citizen residing and domiciled at 19 Jonathan Street, New Bedford, MA.
- Steven J. Hart is believed to be a U.S. citizen residing and domiciled at 7 Regalwood Drive, Coventry, RI.
- Sara Taft-Carter is believed to be a U.S. citizen residing and domiciled at 24 South Bay Drive, Narragansett, RI.
- Brian D. Thompson is believed to be a U.S. citizen residing and domiciled at 3 High St, Smithfield, RI.
- Danielle C. Keegan is believed to be a U.S. citizen residing and domiciled at 157 Lang Drive, North Kingstown, RI.
- Brenden T. Oates is believed to be a U.S. citizen residing and domiciled at 12 Crestview Drive, Smithfield, RI.
- Claudia M. Abreau is believed to be a U.S. citizen residing and domiciled at 651 Norton Avenue, Taunton, MA.

- James D. Sylvester is believed to be a U.S. citizen residing and domiciled at 37 Hunters Knoll, Smithfield, RI.
- Joel A. Robinson is believed to be a U.S. citizen residing and domiciled at 50 Abbott Run Valley Road #1926, Cumberland, RI
- Michael K. Robinson is believed to be a U.S. Citizen residing and domiciled at 22 Homeward Lane, North Attleboro, MA
- Robinson Law Associates, LLC, is believed to be a U.S.-based business located at 111 Airport Road #1, Warwick, RI.

Venue is governed generally by 28 U.S. Code § 1391(b). Subsection (1) does not apply because the defendants are alleged to be residents of different states. In addition to subsection (3), which would give this court personal jurisdiction for the reasons immediately below, subsection (2) may also determine proper venue for this case. In determining where a "substantial part" of the claim occurred, courts will not merely look at the single triggering event prompting the action, but rather at the entire sequence of events underlying the claim. In *Henderson v. Laser Spine Inst. LLC*, 815 F. Supp. 2d 353, (2011), the federal court in the District of Maine held that it was the proper venue for a dispute over fraud, negligence, and intentional infliction of emotional distress. The court looked at how the defendant company had years of contact with the plaintiff in the state of Maine prior to his filing a lawsuit and determined that such contact with Maine established a "substantial part" of the claim even if some of the alleged actions occurred elsewhere. Relevant to the contact Defendant has had with plaintiff Norma Oliver, "The First Circuit explained that 'forum-state contacts need not involve physical presence,' *Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 290 (1st Cir.1999), and '[t]he transmission of information into [the forum state] by way of telephone.....or mail is unquestionably a contact for purposes of [the jurisdiction] analysis.' *Sawtelle v. Farrell*, 70 F.3d 1381, 1389–90 (1st Cir.1995)." *Id*.

To establish specific personal jurisdiction under FL Stat. § 48.193(1)(a) and according to the Eleventh Circuit, "A fundamental element of Florida's specific jurisdiction calculus is that [the] plaintiff's claim must arise out of or relate to <u>at least one</u> of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (emphasis added, quotation omitted). Since 2015, multiple defendants have been in contact with plaintiff Norma Oliver in Florida more than one time, enough of

which became the earliest contributors to this complaint's counts of fraud, negligence, and IIED—the three elements of law also common to *Henderson*. Other causes of action herein, such as one RICO count, also involve contact with plaintiff Norma Oliver in Florida as recently as 2020 from one of the defendants. Details will be provided later in this complaint.

That a court has personal jurisdiction flows from the Due Process Clause of the Fifth Amendment, which "requires only that.....a defendant.....have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Company v. Washington*, 326 U.S. at 316, 66 S. Ct. at 158 (citation omitted). Ironically, "fair play and substantial justice" and due process have been *completely absent* throughout the last two decades for plaintiff Thomas Oliver, which is *precisely why* this new forum should be proper.

Additionally, defendant Smith, as of January 15, 2021, has an interest in real property in the state of Florida, the address of which is 6640 Audubon Trace W, West Palm Beach. Although he is still domiciled in Rhode Island, upon information and belief, he is planning to use the Florida property as a permanent retirement home and is currently renting it to at least one person. Defendant Smith is one of the "Big Three" defendants regarding tort culpability. He, defendant J. Michaud, and defendant Parent carry most of the blame for this complaint.

Lastly, defendant M. Robinson appears to be a second or third generation attorney who has a physical address, a phone number, and an email address that overlaps with his father, defendant J. Robinson, which makes the details of their and their firm's involvement in the counts herein quite difficult to untangle prior to discovery; therefore, both of them and the firm, Robinson Law Associates, LLC, are named defendants. One example of the confusion is the email address, jrmrlegal@aol.com, that plaintiff Thomas Oliver was provided by Anthony Tortolano, a third party who will be described later. This email address, which presumably stands for "Joel Robinson Michael Robinson legal," was given by Mr. Tortolano in response to the demands in the subpoena filed on August 30, 2022.

Defendant J. Robinson owns real property located at 10983 Carmelcove Circle, Boynton Beach, Florida. He is also associated with 10098 Hickorywood Place, Boynton Beach; 11160 Kaui Court,

Boynton Beach; and what appears to be at least one other piece of real estate in Florida. It seems that he is conducting or has conducted business as a "house flipper" in the state. Like defendant Smith, defendant J. Robinson is likely going to use a property in Florida as a permanent retirement residence and is currently conducting business at one or more of them.

Based on the email plaintiff Thomas Oliver received from Mr. Tortolano, it is clear that an attorney connected with Robinson Law Associates, LLC, gave Mr. Tortolano certain bad advice that will be explained later in various counts. However, since determining who the respective culpable people are prior to discovery is proving difficult—if not impossible—defendants J. Robinson, M. Robinson, and Robinson Law Associates, LLC, will be collectively referred to as "defendant Robinson" hereinafter. As is plainly seen, then, at least two defendants, Smith and Robinson, have a connection to Florida in terms of real estate ownership and/or business, thus establishing general personal jurisdiction under FL Stat. § 48.193(2).

## INTRODUCTION

1. The incredible saga began twenty years ago when plaintiff Thomas Oliver, working as a small business, BR Enterprises, performed work for defendant Parent totaling $4,313.95. On July 18, 2014, he transferred ownership of the condominium located at 116 Rocky Brook Way, Wakefield, Rhode Island, (hereinafter "the property") to plaintiff Norma Oliver because he strongly suspected he would be a target for litigation—particularly after his experience with the corrupt courts in Massachusetts, because the information in his first book could be misconstrued as legal advice despite the disclaimer in it, and because he named defendants J. Michaud and Parent and described their offenses in it. Lo and behold, Plaintiff Thomas Oliver's prediction came true. He was originally and rightfully given a default judgment of $11,271.53 on August 27, 2014, for nonpayment of the work he did for defendant Parent. Until then the Massachusetts courts had not done anything corruptly or illegal in the case. However, soon afterward, defendant J. Michaud made a phone call[1] and conspired with defendant Abreu to take the first step

---

[1] It is possible defendant J. Michaud visited the court rather than called it, but his *modus operandi* is to make phone calls as he did to several of plaintiff Thomas Oliver's attorneys (while violating criminal law M. G. L. c. 268 § 13B) and to the U.S. Trustee's Office (while violating 18 U.S. Code § 152, § 157, and other criminal laws). The type of

towards reaching a predetermined alternate outcome by illegally transforming the legitimate default judgment awarded to plaintiff Thomas Oliver into a fraudulent judgment for his client, defendant Parent.

2.   Email correspondence received by plaintiff Thomas Oliver from the court on September 8, 2014, confirms the default judgment being vacated.  The falsified court record, however, shows that on September 15, 2014, it was vacated as "issued in error," which is not true.  The reason for the lie is that defendant J. Michaud called the court in a panic because he erred by not filing a timely responsive pleading, and he either did not want to or would not be able to attend a court hearing—for any pleadings or motions he then wanted to file *nearly nine years late*—before the judgment would become enforceable. Defendant Abreau therefore vacated the judgment beforehand as a favor to him or as a result of bribery— in violation of the rules of procedure and plaintiff Thomas Oliver's right to due process.  Ample proof of such malicious behavior exists.  One piece of indisputable evidence is the email plaintiff Thomas Oliver received from the court on September 8, 2014, saying the judgment had been vacated.  However, the court first officially mentions its "error" (really a non-existent error) on the docket on September 15, 2014, coincidentally several days *after* defendant J. Michaud filed his motion to vacate judgment on September 9, 2014—which was a day *later* than the email plaintiff Thomas Oliver received from the court—and *prior* to any hearing for the motion.  Although there is no entry on the docket for such motion being heard on October 29, 2014, there is a paradoxical ruling by Judge Cunningham on November 09, 2014, allowing the motion to vacate an already vacated judgment, for at least the third time, maybe to ensure it wouldn't somehow unvacate itself.

3.   On September 10, 2014, plaintiff Thomas Oliver received an additional email from the court clerk saying "the judgement [*sic*] was entered in error."  The implication of any error is just not true according to civil procedure rule 55(b)(1), which is the rule under which plaintiff Thomas Oliver filed for default judgment.  Although the state district court said that the default judgment was entered in error, it was not.  All requirements of the case were met perfectly according to rule 55(a) and (b)(1).  Now, if rules

---

contact he made will not be known any earlier than during discovery.  Accordingly, everywhere in this complaint where a form of the word "call" is used with regard to defendant J. Michaud contacting the Massachusetts court, it really means some form of the phrase "call or visit."

55(c), 60(a), and 60(b) are all studied carefully, it can be seen that the only way an error-free default judgment can be vacated is by motion under 60(b).  The emails by court personnel and the contrived court record are all part of a smokescreen to cover up a call by defendant J. Michaud to the court on or before September 8, 2014, in order to get the judgment orally and illegally vacated.  This is nothing less than conspiracy to commit fraud and is clearly intentional misconduct.  At a time beginning shortly thereafter, the court then tried to cover its tracks with multiple docket entries to conceal the call and the conspiracy.

4.    Plaintiff Thomas Oliver knows this call was made because a package from defendant J. Michaud was delivered by U.S. mail not long after September 8, 2014, to the mailing address plaintiff Thomas Oliver gave to the court by email on August 28, 2014.  The only way defendant J. Michaud could have possibly known about this address is via contact with the court since this was not the residential address of plaintiff Thomas Oliver.

5.    Interestingly, the Massachusetts courts denied any existence of "fraud, corruption, and violations of court rules and statutes."  However, shortly after doing so, in 2018, the year defendant J. Michaud was appointed judge, M. G. L. c. 268 § 13B—a criminal law that plaintiff Thomas Oliver *repeatedly* demonstrated in multiple court papers that defendant J. Michaud had violated several times—magically changed.  The change was made so that his misleading and intimidation of plaintiff Thomas Oliver's attorneys—and their subsequent withdrawals—was no longer considered a crime under the new version of this law and defendant J. Michaud could not be prosecuted—which, of course, had he been, would have put a damper on the plans to appoint him judge.

6.    Plaintiff Norma Oliver had conversations with defendant Abreau on September 15, 2015, and again sometime during the November or December time frame of that year.  These conversations were partially meant to rectify the fraud by defendants Parent and J. Michaud, but instead defendant Abreau took no remedial action, which contributed to plaintiff Norma Oliver's distress and, by defendant Abreau conspiring with J. Michaud and ignoring rules of procedure, law, and due process, led to defendant Abreau's culpability in the fraud, negligence, IIED, and RICO claims.

7.    Plaintiff Norma Oliver also received U.S. mail in July or August and again in October or

7

November of 2016 from defendant Abreau, and shortly after February 25, 2020, and March 25, 2021, from defendant Smith—which significantly contributed to plaintiff Norma Oliver's distress and the fraud, negligence, IIED, and RICO claims. Regarding the mail from defendant Smith, plaintiff Norma Oliver became extremely anxious and distressed because she did not know why a Rhode Island attorney would be contacting her, and he would have no legitimate reason for such contact. She does not like lawyers and fears them. Apparently, defendant Smith tried to contact plaintiff Norma Oliver in Florida with a letter of "sale" dated March 25, 2021. Discovery will likely reveal other attempted contacts. This paragraph and the previous one establish personal jurisdiction of this court according to *Henderson* and related case law.

8. It would be irresponsible of this court—one that processes an average of a small handful of cases per day—to decline to exercise that personal jurisdiction and relegate the complaint to the First Circuit and potentially a court that has well over forty times the caseload. Most likely, the defendants will get *one* local attorney or firm to represent them anyway, regardless of where that may be. As such, it will not be an inconvenience for anyone to litigate in Florida, particularly since everything pre-trial can be done electronically/remotely. Lastly, since only 1 percent of all civil cases filed in federal court are resolved at trial, it is highly unlikely anyone will be inconvenienced with having to travel to Florida for that purpose.[2] Plaintiffs are certainly willing to settle the matter. Moreover, plaintiff Norma Oliver is eighty years of age, and travel outside of Florida would be overly burdensome for her.

9. Defendant Parent, seemingly through her lawyer at the time, entered the fraudulent judgment she obtained in Massachusetts in the Rhode Island Superior Court (case number WC-2016-0053; allegedly filed February 3, 2016; still pending; and hereinafter "the RI case"). That lawyer has apparently withdrawn and been replaced with defendant Smith. In the process of attempting to collect the "debt" that is the result of the fraudulent judgment defendants Parent and J. Michaud obtained for themselves in Massachusetts (hereinafter, "the fraudulent debt"), Defendant has ignored rules of procedure, the code of conduct, the law, and the U.S. Constitution and—in doing so—has managed to remove the rightful owner

---

[2] https://judicature.duke.edu/articles/going-going-but-not-quite-gone-trials-continue-to-decline-in-federal-and-state-courts-does-it-matter/

of the property, plaintiff Norma Oliver, from the deed/title of it via the RI case. The defendants' grossly negligent acts and intentional misconduct have caused financial and psychological injury to Plaintiff. As such, Defendant is liable for both compensatory and punitive damages.

10. This is an action for tortious conduct with the following causes:

- CONVERSION/CIVIL THEFT IN VIOLATION OF 15 U.S. CODE § 1673, FL STAT. § 222.11 AND § 772.11, AND RI GEN. LAW § 10-5-8
- VIOLATION OF RI GEN. LAW § 9-26-4, PROPERTY EXEMPT FROM ATTACHMENT
- VIOLATION OF RI GEN. LAW § 34-18-37, IMPROPER TERMINATION OF PERIODIC TENANCY
- WRONGFUL ATTACHMENT
- INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE
- VIOLATION OF CONSTITUTIONAL RIGHTS
- ABUSE OF PROCESS
- VIOLATION OF 11 U.S. CODE § 362, AUTOMATIC STAY DURING BANKRUPTCY
- NEGLIGENCE/VIOLATION OF RI GEN. LAW § 9-20-4 AND FL STAT. § 768.81
- VIOLATION OF FL STAT. § 713.31, FILING A FRAUDULENT LIEN
- ACTUAL FRAUD/CONCEALMENT
- CIVIL CONSPIRACY
- LIABILITY PURSUANT TO 42 U.S.C. § 1983
- VIOLATION OF 18 U.S. CODE § 1962(b), RICO
- VIOLATION OF 18 U.S. CODE § 1962(c), RICO
- VIOLATION OF 18 U.S. CODE § 1962(d), RICO
- INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

This is a *pro se* complaint entitled to a liberal reading and less stringent standards since it was prepared without assistance of counsel. See *Haines v. Kerner, et al.*, 404 U.S. 519, 92 S. Ct. 594 (1972).

### COUNT ONE: CONVERSION/CIVIL THEFT IN VIOLATION OF 15 U.S. CODE § 1673, FL STAT. § 222.11 AND § 772.11, AND RI GEN. LAW § 10-5-8

11. This count is against defendants Parent, J. Michaud, M. Michaud, Hart, Smith, Sylvester, and Robinson (the "Count 1 Defendants").

9

12. On April 25, 2022, plaintiff Thomas Oliver received an email from Anthony Tortolano, the tenant renting the property: "So I had to get my real estate lawyer involved with this situation because of the contact from the court constable, etc.....I was instructed to pay the rent to the 'new' owners by my lawyer and James [Sylvester, the court constable]."  Based on the actions of defendants Robinson and Sylvester and other actions following the entry of the fraudulent judgment in the Rhode Island Superior Court by defendant Parent, including, but not limited to, the steps defendant Smith took to move the case through the court and cause corruption of title to the property and the notices left at or sent to the property by defendants J. Michaud, M. Michaud, Sylvester, and Hart, the Count 1 Defendants have thus caused the $1,500 monthly rental income due to plaintiff Thomas Oliver under the provisions of the existing lease for the property to be diverted away from him so that he now receives none of the rent money.

13. Irrespective of the legitimacy of anything else related to the property, both state and federal laws limit the amount of income that can be garnished.  Based on plaintiff Thomas Oliver's income, 15 U.S. Code § 1673(a)(2) and RI Gen. Law § 10-5-8 set the limit at $91.76 per month, and FL Stat. § 222.11 sets the limit at $0 per month.

14. Except for defendants Sylvester and Robinson, the Count 1 Defendants were notified by email—once on June 27, 2022, and again on July 5, 2022—and in filings in the RI case of garnishment law violations yet continue to convert monies due plaintiff Thomas Oliver and failed to return amounts already converted and have thus financially crippled him.  As of today, no known (written) court order has issued that dictates rent moneys for the property should be so diverted.  With regard to civil theft, FL Stat. § 772.11 allows for treble damages.

15. As a direct and proximate result of conversion/civil theft of rent by the Count 1 Defendants as stated in paragraph 12, plaintiff Thomas Oliver has been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.  The Count 1 Defendants have also injured plaintiff Thomas Oliver in his business/employment in the amount of $1,500 per month beginning April 2022, the calculations for which are shown in exhibit "A."

16. The Count 1 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for

compensatory damages of said interest and penalties and $4,500 per month beginning April 2022 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

### COUNT TWO: VIOLATION OF RI GEN. LAW § 9-26-4, PROPERTY EXEMPT FROM ATTACHMENT

17. This count is against defendants Parent, J. Michaud, M. Michaud, Hart, Smith, Sylvester, and Robinson (the "Count 2 Defendants").

18. RI Gen. Law § 9-26-4(8)(ii) specifically says, "The entire wages or salary of any debtor due or payable from any employer, where the debtor has been the object of relief from any state, federal, or municipal corporation or agency for a period of one year from and after the time when the debtor ceases to be the object of such relief."

19. The Count 2 Defendants Parent and Smith were made aware that plaintiff Thomas Oliver was receiving such relief because said plaintiff stated so in a motion filed in the RI case, which the Count 2 Defendants Parent and Smith were served: "Just days ago I have been put on SNAP/food stamps. I am also on state medical aid and the Lifeline program." Evidence was attached to the motion showing that such relief had been ongoing since as early as January 5, 2022, and, in fact, predates 2016.

20. RI Gen. Law § 9-26-4(16) specifically says, "In addition to the exemptions herein, a debtor in bankruptcy may exempt an additional six thousand five hundred dollars ($6,500) in any assets" (emphasis added). Since the only major asset plaintiff Thomas Oliver owns is his vehicle—valued at approximately $1,129—and he is currently still litigating in the bankruptcy court, the Count 2 Defendants' seizure of rent payments has exceeded the amount allowable according to law by $5,371[3].

21. As a direct and proximate result of the violation of RI Gen. Law § 9-26-4 by the Count 2 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," or $5,371, whichever is greater. He has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

---

[3] https://www.kbb.com/hyundai/accent/2009/gls-sedan-4d/?condition=fair&intent=trade-in-sell&mileage=150000&modalview=false&options=6466855%7ctrue&pricetype=trade-in&vehicleid=226661

22. The Count 2 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties and $1,500 per month beginning April 2022 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

**COUNT THREE: VIOLATION OF RI GEN. LAW § 34-18-37, IMPROPER TERMINATION OF PERIODIC TENANCY**

23. This count is against defendants Parent, J. Michaud, M. Michaud, Hart, and Smith (the "Count 3 Defendants").

24. Although one notice from defendant Hart was received by Anthony Tortolano at "least three (3) months prior to the expiration of the occupation year," the lease applicable to Mr. Tortolano does not expire until September 30, 2022, so instructing him to move before then as defendant Hart did in this notice violated RI Gen. Law § 34-18-37.  However, this notice amounts to nothing more than threats and harassment since the Count 3 Defendants have changed "ownership" of the property fraudulently.

25. Defendants J. Michaud and/or M. Michaud left at least one notice at the property shortly before April 7, 2022, threatening eviction and/or removal of belongings.  Other harassing notices have been left at or sent to the property around this time frame by the Count 3 Defendants or their operatives.

26. As a direct and proximate result of the acts by defendants Parent and Smith regarding corruption of title to the property and the violation of RI Gen. Law § 34-18-37 by the Count 3 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A."  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

27. The Count 3 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties and $1,500 per month beginning April 2022 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

**COUNT FOUR: WRONGFUL ATTACHMENT**

28. This count is against defendants Parent, J. Michaud, M. Michaud, and Smith (the "Count 4

12

Defendants").

29. The property is not subject to attachment because it provides approximately 50 percent of plaintiff Thomas Oliver's income, and since it has been levied and "sold" via the actions of defendants Parent, Smith, J. Michaud, and M. Michaud, his income has become and remains negative and he has been forced into extreme poverty. The Count 4 Defendants' act of attachment and "sale" violates 15 U.S. Code § 1673, RI Gen. Law § 9-26-4(8)(ii) and (16), and FL Stat. § 222.11 and has injured Plaintiff.

30. In a letter dated March 25, 2021, defendant Smith addressed plaintiff Norma Oliver as if the property is exclusively hers—because it truly is. Defendant Smith knows that it is and stated, "In accordance with our written request, the Constable has scheduled a Constable's Sale of your real estate at 116 Rocky Brook Way, Unit 26, South Kingstown, Rhode Island." He continued: "If you plan to pay this matter in full prior to the sale, you must do so at our office....." Plaintiff Norma Oliver has never owed any debt—fraudulently obtained or otherwise—to the Count 4 Defendants and is not, and never was, obligated to pay any monies to them. Defendant Smith has openly admitted that he is pursuing the wrong person to pay the fraudulent debt attributed to plaintiff Thomas Oliver.

31. Plaintiff Norma Oliver has been the sole owner of the property since July 2014 and well before defendants Parent or J. Michaud filed any pleadings whatsoever in the originating case in Massachusetts; therefore, the Count 4 Defendants have wrongfully—either directly or indirectly—attached the property or benefited from its "sale" since plaintiff Norma Oliver owes no debt to any of them.

32. As a direct and proximate result of the wrongful attachment of the property by the Count 4 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

33. The Count 4 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

### COUNT FIVE: INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

34. This count is against defendants Parent, J. Michaud, M. Michaud, Hart, and Smith (the "Count 5 Defendants").

35. Plaintiff Thomas Oliver established a lease with a third party, Anthony Tortolano, beginning on October 15, 2020. In the lease, Mr. Tortolano is designated as tenant of the property, and plaintiff Thomas Oliver is designated as landlord. This relationship stated that rent for the property was to be paid to plaintiff Thomas Oliver on a monthly basis.

36. The Count 5 Defendants knew of this relationship because defendant J. and/or M. Michaud, defendant Hart, and other operatives of the Count 5 Defendants left harassing and intimidating notices at the property and/or sent them by U.S. mail addressed to Mr. Tortolano, including, but not limited to, threatening personal eviction and possibly other legal action, causing Mr. Tortolano to send rent payments to one or more of the Count 5 Defendants or to one of their operatives. As such, the Count 5 Defendants have deliberately interfered with the business relationship of plaintiff Thomas Oliver and Mr. Tortolano. They have also interfered with plaintiff Norma Oliver's ownership of the property thus causing serious economic harm to Plaintiff.

37. As a direct and proximate result of the intentional interference with economic advantage by the Count 5 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

38. The Count 5 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

## COUNT SIX: VIOLATION OF CONSTITUTIONAL RIGHTS

39. This count is against defendants Smith, Parent, J. Michaud, M. Michaud, Hart, Oates, Taft-Carter, Thompson, Keegan, and Abreau.

40. Plaintiff Thomas Oliver was originally and rightfully given a default judgment of $11,271.53 on August 27, 2014, for nonpayment of the work he did for defendant Parent. Until then the Massachusetts courts had not done anything corruptly or illegal in the case. However, soon afterward, defendant J. Michaud made a phone call and conspired with defendant Abreau to take the first step towards reaching a predetermined alternate outcome by illegally transforming the legitimate default judgment awarded to plaintiff Thomas Oliver into a fraudulent judgment for his client, defendant Parent.

41. Email correspondence received by plaintiff Thomas Oliver from the court on September 8, 2014, confirms the default judgment being vacated. The falsified court record, however, shows that on September 15, 2014, it was vacated as "issued in error," which is not true. The reason for the lie is that defendant J. Michaud called the court in a panic because he erred by not filing a timely responsive pleading, and he either did not want to or would not be able to attend a court hearing—for any pleadings or motions he then wanted to file *nearly nine years late*—before the judgment would become enforceable. Defendant Abreau therefore vacated the judgment beforehand as a favor to him or as a result of bribery—in violation of the rules of procedure and plaintiff Thomas Oliver's right to due process. Ample proof of such malicious behavior exists. One piece of indisputable evidence is the email plaintiff Thomas Oliver received from the court on September 8, 2014, saying the judgment had been vacated. However, the court first officially mentions its "error" (really a non-existent error) on the docket on September 15, 2014, coincidentally several days *after* defendant J. Michaud filed his motion to vacate judgment on September 9, 2014—which was a day *later* than the email plaintiff Thomas Oliver received from the

court—and *prior* to any hearing for the motion. Although there is no entry on the docket for such motion being heard on October 29, 2014, there is a paradoxical ruling by Judge Cunningham on November 09, 2014, allowing the motion to vacate an already vacated judgment, for at least the third time, maybe to ensure it wouldn't somehow unvacate itself.

42. On September 10, 2014, plaintiff Thomas Oliver received an additional email from the court clerk saying "the judgement [*sic*] was entered in error." The implication of any error is just not true according to civil procedure rule 55(b)(1), which is the rule under which plaintiff Thomas Oliver filed for default judgment. Although the state district court said that the default judgment was entered in error, it was not. All requirements of the case were met perfectly according to rule 55(a) and (b)(1). Now, if rules 55(c), 60(a), and 60(b) are all studied carefully, it can be seen that the only way an error-free default judgment can be vacated is by motion under 60(b). The emails by court personnel and the contrived court record are all part of a smokescreen to cover up a call by defendant J. Michaud to the court on or before September 8, 2014, in order to get the judgment orally and illegally vacated. This is nothing less than conspiracy to commit fraud and is clearly intentional misconduct. At a time beginning shortly thereafter, the court then tried to cover its tracks with multiple docket entries to conceal the call and the conspiracy.

43. Plaintiff Thomas Oliver knows this call was made because a package from defendant J. Michaud was delivered by U.S. mail not long after September 8, 2014, to the mailing address plaintiff Thomas Oliver gave to the court by email on August 28, 2014. The only way defendant J. Michaud could have possibly known about this address is via contact with the court since this was not the residential address of plaintiff Thomas Oliver.

44. Interestingly, the Massachusetts courts denied any existence of "fraud, corruption, and violations of court rules and statutes." However, shortly after doing so, in 2018, the year defendant J. Michaud was appointed judge, M. G. L. c. 268 § 13B—a criminal law that plaintiff Thomas Oliver *repeatedly* demonstrated in multiple court papers that defendant J. Michaud had violated several times— magically changed. The change was made so that his misleading and intimidation of plaintiff Thomas Oliver's attorneys—and their subsequent withdrawals—was no longer considered a crime under the new

16

version of this law and defendant J. Michaud could not be prosecuted—which, of course, had he been, would have put a damper on the plans to appoint him judge.

45. Defendant Taft-Carter prevented plaintiff Thomas Oliver from having a virtual hearing on his motion to dismiss the RI case because, according to an email from her, the "protocol in effect" requires *pro se* litigants such as him to have in-person hearings, but allows virtual hearings to litigants represented by counsel, which is a clear act of discrimination against a class, i.e., the class of *pro se* litigants, thus violating the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.[4]

46. Via conversion of all rent payments for the property beginning on or about April 5, 2022, and continuing to present, defendants Smith, Parent, J. Michaud, M. Michaud, and Hart have intentionally taken more of plaintiff Thomas Oliver's earnings than allowed by law. The highest written law of the land, the U.S. Constitution, says in its Due Process Clause of the Fourteenth Amendment, "nor shall any State deprive any person of life, liberty, or property, without due process of law." Since plaintiff Thomas Oliver's earnings have been constructively garnished without him being heard in the RI case—and garnished excessively—and without any known court order of garnishment relevant to the fraudulent debt having been issued, he has been denied due process.

47. Defendants Smith, Parent, J. Michaud, and M. Michaud have also recklessly changed "ownership" of the property—or are responsible for it—without plaintiff Thomas Oliver being heard in the RI case and without having been litigated the fraud in the case that caused the fraudulent judgment to issue in the first place and then later be entered in Rhode Island. Both are more violations of Plaintiff's right to due process.

48. Since plaintiff Thomas Oliver was never personally served in the RI case, title for the property is still legally in plaintiff Norma Oliver's name according to the U.S. Supreme Court in *Pennoyer v. Neff*, 95 U.S. 714 (1878): "This court now holds that, by reason of the absence of a <u>personal service</u>.....on the defendant, the [court] had no jurisdiction, its judgment could not authorize the sale of

---

[4] In *Morrison v. Lipscomb,* 877 F.2d 463 (1989), the Sixth Circuit decided that a judge was not entitled to judicial immunity for his decision to issue a temporary ban on "writs of restitution." Even though "no one but a judge could issue such an order," the order was administrative, and not judicial, because it "was a general order, not connected to any particular litigation," and it could not be appealed, as is the case here with the "protocol in effect."

land in said county, and, as a necessary result, a purchaser of land under it obtained no title; that, as to the former owner, <u>it is a case of depriving a person of his property without due process of law</u>" (emphasis added).  Moreover, laws authorizing garnishment or other seizure of property of an alleged defaulting debtor require that[5]:

- the creditor furnish adequate security to protect the debtor's interest
- the creditor make a specific factual showing before a neutral officer or magistrate, not a clerk or other such functionary, of probable cause to believe that he is entitled to the relief requested, and
- an opportunity be assured for an adversary hearing promptly after seizure to determine the merits of the controversy, with the burden of proof on the creditor.

49. No known evidence shows that any of the above requirements have been met by defendants Smith, Parent, Oates, Taft-Carter, Thompson, and Keegan who have denied Plaintiff due process.

50. Notice must be given in a manner that actually notifies the person or that has a reasonable certainty of resulting in such notice.[6]  Defendants Smith, Parent, Oates, Taft-Carter, Thompson, and Keegan were never assured that Plaintiff knew the property had been sold or was about to be.  Plaintiff did not suspect that title to the property had been corrupted until April 2022.  Indeed, with a hearing for plaintiff Thomas Oliver's motion to dismiss the RI case scheduled for June 15, 2022, Plaintiff did not expect anything detrimental to happen before then, particularly since plaintiff Thomas Oliver also filed a motion to stay many months earlier on October 27, 2021.  Plaintiff's right to due process was violated since defendants Smith, Parent, Oates, Taft-Carter, Thompson, and Keegan provided no (known at the time) notification to Plaintiff about the planned "sale" of the property on June 10, 2021, and defendants Smith and Parent or their operatives "bought" and/or "sold" the property on that day.  Plaintiff's right was similarly violated when defendant Taft-Carter seemingly allowed said transfer despite the motion to stay.

51. Rhode Island courts are notorious for infringing upon citizens' right to due process, which is

---

[5] *Mitchell v. W.T. Grant Co.*, 416 U.S. at 615–18 (1974) and at 623 (Justice Powell concurring).  See also *Arnett v. Kennedy*, 416 U.S. 134, 188 (1974) (Justice White concurring in part and dissenting in part).  Efforts to litigate challenges to seizures in actions involving two private parties may be thwarted by findings of "no state action," but there often is sufficient participation by state officials in transferring possession of property to constitute state action and implicate due process.
[6] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Schroeder v. City of New York*, 371 U.S. 208 (1962); *Robinson v. Hanrahan*, 409 U.S. 38 (1972)

demonstrated by a case that sought class certification.  "In sum, we are in general agreement with the district court's conclusion that Rhode Island has not provided judgment debtors whose property it permits creditors to seize unilaterally by writ of attachment with sufficient, defined procedural process to meet the requirements of the due process clause of the fourteenth amendment."  *Rose Dionne, Etc., Plaintiff, Appellee, v. Gerard Bouley, Etc., Defendant, Appellant. Rose Dionne, Etc., Plaintiff, Appellant, v. Gerard Bouley, Etc., Defendant, Appellee*, 757 F.2d 1344 (1st Cir. 1985).  Of crucial note in that matter, "The United States District Court for the District of Rhode Island, in a comprehensive opinion, *Dionne v. Bouley*, 583 F. Supp. 307 (1984), held that current procedures were constitutionally insufficient.  It enjoined defendant Gerard Bouley, Chief Clerk of the District Courts of the State of Rhode Island, from issuing writs of attachment thereunder."  The evidence shows that at least two such relevant writs have been issued against the property by clerks of the Rhode Island Superior Court.  On February 22, 2016, clerk Brian Thompson, defendant, issued one such writ, and on November 5, 2019, clerk Danielle Keegan, defendant, issued another.  Therefore, such actions contravene rulings established by the United States District Court for the District of Rhode Island and have violated Plaintiff's right to due process.

52. As a direct and proximate result of the violation of the plaintiff's constitutional rights by the defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

53. Defendants Smith, Parent, J. Michaud, M. Michaud, and Hart severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.  Because of the egregiousness of the offenses and as supported by settled law from the U.S. Supreme Court regarding malicious intent or

the reckless indifference to the rights of Plaintiff by the defendants, Plaintiff seeks punitive damages in the amount of $250,000 against defendants Parent, Smith, J. Michaud, M. Michaud, and Hart.[7]  The remaining defendants are also liable to Plaintiff who seeks declaratory and/or injunctive relief against them as reiterated and expounded in those paragraphs, which, along with the table, cover the specific relief claimed against each defendant.

### COUNT SEVEN: ABUSE OF PROCESS

54. This count is against defendants Parent, J. Michaud, M. Michaud, Hart, and Smith (the "Count 7 Defendants").

55. Assuming incorrectly for the moment that defendant Parent had a valid judgment against plaintiff Thomas Oliver and then entered that judgment in the Rhode Island courts, which she did, such legal proceeding would then have been done in "proper form."  However, the Count 7 Defendants have violated the plaintiffs' constitutional rights, rules of procedure, various state and federal laws, and various elements of common law and have used the proceedings for an "ulterior or wrongful purpose" to attach and/or seize real property solely in plaintiff Norma Oliver's name and to wrongly garnish plaintiff Thomas Oliver's income.  Moreover, the Count 7 Defendants have acted with malice and have not legally enforced any "judgment" against plaintiff Thomas Oliver.

56. As a direct and proximate result of abuse of process by the Count 7 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

57. The Count 7 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to

---

[7] *Smith v. Wade*, 461 U.S. 30 (1983): "The common law, both in 1871 and now, allows recovery of punitive damages in tort cases not only for actual malicious intent, but also for reckless indifference to the rights of others."

plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table. Because of the egregiousness of the offenses and as supported by settled law from the U.S. Supreme Court, Plaintiff seeks punitive damages in the amount of $250,000 against the Count 7 Defendants.[8]

### COUNT EIGHT: VIOLATION OF 11 U.S. CODE § 362, AUTOMATIC STAY DURING BANKRUPTCY

58. This count is against defendants Parent, J. Michaud, M. Michaud, and Smith (the "Count 8 Defendants").

59. Plaintiff Thomas Oliver filed for bankruptcy on February 28, 2020. The stay began on that day and continued through August 3, 2021. On June 10, 2021, Ronald Russo, as an agent for the Count 8 Defendants, "sold" the property in violation of the stay in effect at the time. "Selling" any property under such circumstances would make the sale and corresponding deed void as a matter of law. See, for example, *Albany Partners Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670, 675 (11th Cir. 1984). See also *In re Soares*, 107 F.3d 969 (1st Cir. 1997) (Holding that action taken in derogation of the automatic stay is not merely "voidable" but "void").

60. As a direct and proximate result of the violation of the automatic stay by the Count 8 Defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

61. The Count 8 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and

---

[8] *Heck v. Humphrey*, 512 U.S. 477 (1994)

142 and in the accompanying table.

**COUNT NINE: NEGLIGENCE/VIOLATION OF RI GEN. LAW § 9-20-4 AND FL STAT. § 768.81**

62. This count is against all defendants.

63. Defendant Abreau illegally vacated the default judgment originally and rightfully given to plaintiff Thomas Oliver after communicating with defendant J. Michaud on or before September 8, 2014. She did this either as a favor to defendant J. Michaud or because of bribery. Both of them intentionally, knowingly, and recklessly contravened the rules of civil procedure, law, and U.S Constitution.

64. Defendant Abreau also spoke with plaintiff Norma Oliver on September 15, 2015, regarding rescheduling of the trial in the Massachusetts case and again sometime during the November or December time frame of that year regarding status of certain aspects of that case. However, plaintiff Norma Oliver received no definitive information with respect to either but should have since the trial was scheduled for September 15, 2015, and the status was also available during the latter conversation.

65. Rhode Island clerks were precluded, according to *Dionne* as stated in paragraph 51, from issuing writs against property of alleged debtors—much less against property of others. Nonetheless, at least two clerks, defendants Keegan and Thompson, carelessly issued them against the property.

66. Defendants Parent and Smith should have contacted Plaintiff Thomas Oliver by phone, text, or email to give notice of proceedings in the RI case or, at a minimum, ask if process could be sent via one of these means to ensure it would be received. Plaintiff Thomas Oliver has provided his phone number and email address in various court records in several matters in many states and to which defendants Parent and Smith have access and/or have been a party. Rather than exercise due care by exhausting all means of communication to contact plaintiff Thomas Oliver, they did not do so.

67. Defendants Robinson and Sylvester exhibited gross negligence when they failed to check if plaintiff Thomas Oliver's income was subject to a court order for garnishment relative to the fraudulent debt and if any of his rental income could be taken under 15 U.S. Code § 1673(a)(2), RI Gen. Law § 10-5-8, or FL Stat. § 222.11. They could have contacted plaintiff Thomas Oliver through Anthony Tortolano to inquire about this; however, without doing so, defendants Robinson and Sylvester informed Mr.

Tortolano to send rent payments for the property to other defendants or one of their operatives.

68. Relevant to statutes limiting garnishment of wages, the defendants who are known to be versed in law (Smith, J. Michaud, Hart, Taft-Carter, Robinson) should be aware of them. Plaintiff Thomas Oliver made perfectly clear in many court filings to which defendants Parent and Smith were privy that his income bordered on the poverty line. Defendants Parent, J. Michaud, M. Michaud, Hart, and Smith acted recklessly by failing to take proper precautions before garnishing more of plaintiff Thomas Oliver's income than should have been taken, which is $0 according to FL Stat. § 222.11.

69. According to Rule 4 of the Rhode Island rules of civil procedure and an email conversation plaintiff Thomas Oliver had with defendant Keegan, out-of-state litigants are to be *personally* served process or served with a *signed receipt of delivery*, most likely to prevent this precise type of fiasco from occurring. No such service was made or, to the best of the plaintiffs' knowledge, ever attempted.

70. RI Sup. Ct. R. Civ. P. 4(m)(3) states, "The writ of attachment.....shall be submitted to the court with a motion for its issuance." Nothing in the docket reveals such a motion ever being submitted or heard. The vacated hearing of June 15, 2022, was never entered into the court docket nor was any motion to continue by defendant Smith ever recorded. Most likely, he moved the hearing originally scheduled for that date by simply phoning the court and asking for it to be moved to July 15, 2022, which was then rescheduled again because of an alleged conflict according to the chief clerk, defendant Oates, in an email: the judge "will not be in Washington County during the week of July 15, 2022 [*sic*] as she has been assigned to a matter in Providence County that week." The hearing was then rescheduled for July 8, 2022, but was vacated again; however, this action was also never entered into the docket. One is left to wonder how many other important events have been omitted from the docket and/or short-circuited. The court has the duty to follow rules of procedure, the law, and the U.S. Constitution but has not done so.

71. RI Gen. Law § 9-4-9(a) requires that a *lis pendens* be filed in the town or city where property is situated whenever a legal action has been filed that concerns title to real estate. Defendants Smith and Parent failed to file such a document. It is possible that the town of South Kingstown, Rhode Island, would have contacted Plaintiff about such a document had it been filed, which would have given Plaintiff

notice during the very early stages of the RI case that things were amiss. The town has called Plaintiff on multiple occasions regarding the property, for example, when issues related to taxes have arisen.

72. Defendant Parent knowingly filed the fraudulent judgment in Rhode Island and she and defendant Smith also negligently placed a lien on the wrong property. They acted with gross negligence—if not malice—by not removing the lien once informed that the property was owned solely by plaintiff Norma Oliver.

73. As a direct and proximate result of the negligent acts by the defendants, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

74. Defendants Parent, Smith, J. Michaud, M. Michaud, Hart, Robinson, and Sylvester are thus liable "on the basis of such party's percentage of fault" pursuant to FL Stat. § 768.81(3) to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table. Because FL Stat. § 768.72 allows for punitive damages when a defendant is "personally guilty of intentional misconduct or gross negligence," Plaintiff seeks punitive damages in the amount of $350,000 against defendants Parent, Smith, J. Michaud, M. Michaud, Hart, Robinson, and Sylvester. The remaining defendants are also liable to Plaintiff who seeks declaratory and/or injunctive relief against them as reiterated and expounded in those paragraphs, which, along with the table, cover the specific relief claimed against each defendant.

**COUNT TEN: VIOLATION OF FL STAT. § 713.31, FILING A FRAUDULENT LIEN**

75. This count is against defendants Parent and Smith (the "Count 10 Defendants").

76. The lien on the property allegedly filed on February 7, 2020, by the Count 10 Defendants is

fraudulent in that the foreign judgment ultimately used to create the lien was fraudulently obtained.  The lien has also been placed on real estate not owned by plaintiff Thomas Oliver and is therefore also fraudulent for that reason.

77. FL Stat. § 713.31(2)(b) and (c) are relevant with the latter stating: "[T]he lienor shall be liable to the owner or the defrauded party who prevails in an action under this subsection in damages, which shall include court costs, clerk's fees, a reasonable attorney's fee and costs for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging the lien, and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due."

78. As a direct and proximate result of the Count 10 Defendants showing intentional misconduct by knowingly filing a fraudulent lien, and thereafter refusing to remove it once they were informed that plaintiff Thomas Oliver did not own the property, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

79. The Count 10 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.  Because FL Stat. § 768.72 also allows for punitive damages when a defendant is "personally guilty of intentional misconduct or gross negligence," Plaintiff seeks punitive damages in the amount of $54,691 against the Count 10 Defendants.

**COUNT ELEVEN: ACTUAL FRAUD/CONCEALMENT**

80. This count is against defendants Parent, J. Michaud, M. Michaud, Abreau, and Smith (the

25

"Count 11 Defendants").

81. In the case in Massachusetts that gave rise to the fraudulent judgment entered in Rhode Island, rules of procedure, civil and criminal laws, the code of conduct, judicial canons, and the U.S. Constitution were not violated—they were obliterated. Evidence revealing the sheer magnitude of the egregious behavior of many actors can be found in nearly all of the hyperlinks at the following page: www.stloiyf.com/evidence/letter.htm. A complaint plaintiff Thomas Oliver filed with the Department of Injustice that encompasses the fraud in the originating case and in his bankruptcy can be found here: www.stloiyf.com/complaint/complaint.htm.[9] See also chapter six in his second book, *Our American Injustice System*, which can be read at: www.oais.us.[10]

82. All the wrongdoing described in count nine, if done deliberately, constitutes fraud, if not conspiracy to commit fraud. Evidence revealed during discovery should provide enlightenment as to whether those acts were negligent or deliberate and thus may be incorporated into this count.

83. Defendant J. Michaud's political connections with former U.S. Senator Scott Brown helped the level of fraud and corruption in the Massachusetts case that truly spawned this complaint reach astronomical levels. Fraud by the Count 11 Defendants includes, but is not limited to, the following:

- On at least three occasions from 2005 to 2015, defendant J. Michaud contacted plaintiff Thomas Oliver's lawyers and—at least twice by his own admission—violated Massachusetts criminal law c. 268 § 13B in order to mislead and/or intimidate plaintiff Thomas Oliver's lawyers to withdraw and get one step closer to transforming a legitimate default judgment in plaintiff Thomas Oliver's favor into a fraudulent judgment in his client's favor. One example can be found here.

- In September 2014, defendant J. Michaud phoned the Massachusetts court. The purpose of his call was to vacate the legally sound default judgment originally given to plaintiff Thomas Oliver, which defendant Abreau did merely as a result of receiving the phone call—a fraudulent act in clear violation of the rules of procedure, law, and Constitution.

- In September 2014, *nearly nine years late*, defendants Parent and J. Michaud filed a fraudulent answer and counterclaim. Proof can be found here.

- The court "docket" in that case was contrived/manipulated/falsified several times with incorrect information and in favor of defendants J. Michaud and Parent, which is easily proved and reflected in the evidence. One example can be found here.

---

[9] *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). The complaint may include: (1) documents incorporated by reference in the complaint; and (2) facts taken on judicial notice. *Pungitore v. Barbera*, No. 12-1795-cv, 2012 WL 6621437, at *2 (2d Cir. Dec. 20, 2012).
[10] https://www.amazon.com/Our-American-Injustice-System-Syndicate/dp/0996592970

- Plaintiff Thomas Oliver was told in an email not to contact the court about the case and was denied a trial—clear violations of his constitutional rights.

- Hearings were held clandestinely.  One example can be found here.

- After defendant J. Michaud was appointed judge in 2018 and plaintiff Thomas Oliver had *repeatedly* stated in many court filings that defendant J. Michaud had violated Massachusetts criminal law c. 268 § 13B, it magically changed so that he could not be prosecuted for multiple violations of it.

- After being the beneficiary of the judgment and likely viewing it as a "free lunch" but knowing full well that it was fraudulent, defendant Parent, seemingly through her then-counsel, entered it as a foreign judgment in the Rhode Island Superior Court, allegedly on February 3, 2016.

- Sometime during the period from March 1, 2020, and May 30, 2020, defendant J. Michaud contacted the U.S. Trustee's Office and, as a legally disinterested party, interfered with justice by conveying false information to someone employed by that office in order to block the discharge of plaintiff Thomas Oliver's "debt."  Seven distinct forms of evidence exist that prove he made contact.

- On or about March 25, 2021, defendant Smith sent a letter to plaintiff Norma Oliver in Florida allegedly informing her that a "sale" of the property was planned—despite knowing that she owed no debt to him or defendant Parent and that the property was solely in plaintiff Norma Oliver's name

- On June 10, 2021, defendant Parent "bought" the property during a fraudulent sale of it.

- On or about July 14, 2021, defendant Parent "sold" the property to FUBAR Realty Trust, to which defendant M. Michaud was trustee.

84. As a direct and proximate result of the Count 11 Defendants committing fraud, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

85. The Count 11 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.  Defendant Abreau is also liable to Plaintiff who seeks declaratory and/or injunctive relief against her as reiterated and expounded in those paragraphs, which, along with the

table, cover the specific relief claimed against each defendant.

## COUNT TWELVE: CIVIL CONSPIRACY

86. This count is against all defendants except Robinson and Sylvester.

87. Plaintiff Thomas Oliver was originally and rightfully given a default judgment of $11,271.53 on August 27, 2014, for nonpayment of the work he did for defendant Parent. Until then the Massachusetts courts had not done anything corruptly or illegal in the case. However, soon afterward, defendant J. Michaud made a phone call and conspired with defendant Abreau to take the first step towards reaching a predetermined alternate outcome by illegally transforming the legitimate default judgment awarded to plaintiff Thomas Oliver into a fraudulent judgment for his client, defendant Parent.

88. Email correspondence received by plaintiff Thomas Oliver from the court on September 8, 2014, confirms the default judgment being vacated. The falsified court record, however, shows that on September 15, 2014, it was vacated as "issued in error," which is not true. The reason for the lie is that defendant J. Michaud called the court in a panic because he erred by not filing a timely responsive pleading, and he either did not want to or would not be able to attend a court hearing—for any pleadings or motions he then wanted to file *nearly nine years late*—before the judgment would become enforceable. Defendant Abreau therefore vacated the judgment beforehand as a favor to him or as a result of bribery—in violation of the rules of procedure and plaintiff Thomas Oliver's right to due process. Ample proof of such malicious behavior exists. One piece of indisputable evidence is the email plaintiff Thomas Oliver received from the court on September 8, 2014, saying the judgment had been vacated. However, the court first officially mentions its "error" (really a non-existent error) on the docket on September 15, 2014, coincidentally several days *after* defendant J. Michaud filed his motion to vacate judgment on September 9, 2014—which was a day *later* than the email plaintiff Thomas Oliver received from the court—and *prior* to any hearing for the motion. Although there is no entry on the docket for such motion being heard on October 29, 2014, there is a paradoxical ruling by Judge Cunningham on November 09, 2014, allowing the motion to vacate an already vacated judgment, for at least the third time, maybe to ensure it wouldn't somehow unvacate itself.

28

89. On September 10, 2014, plaintiff Thomas Oliver received an additional email from the court clerk saying "the judgement [*sic*] was entered in error." The implication of any error is just not true according to civil procedure rule 55(b)(1), which is the rule under which plaintiff Thomas Oliver filed for default judgment. Although the state district court said that the default judgment was entered in error, it was not. All requirements of the case were met perfectly according to rule 55(a) and (b)(1). Now, if rules 55(c), 60(a), and 60(b) are all studied carefully, it can be seen that the only way an error-free default judgment can be vacated is by motion under 60(b). The emails by court personnel and the contrived court record are all part of a smokescreen to cover up a call by defendant J. Michaud to the court on or before September 8, 2014, in order to get the judgment orally and illegally vacated. This is nothing less than conspiracy to commit fraud and is clearly intentional misconduct. At a time beginning shortly thereafter, the court then tried to cover its tracks with multiple docket entries to conceal the call and the conspiracy.

90. Plaintiff Thomas Oliver knows this call was made because a package from defendant J. Michaud was delivered by U.S. mail not long after September 8, 2014, to the mailing address plaintiff Thomas Oliver gave to the court by email on August 28, 2014. The only way defendant J. Michaud could have possibly known about this address is via contact with the court since this was not the residential address of plaintiff Thomas Oliver.

91. Interestingly, the Massachusetts courts denied any existence of "fraud, corruption, and violations of court rules and statutes." However, shortly after doing so, in 2018, the year defendant J. Michaud was appointed judge, M. G. L. c. 268 § 13B—a criminal law that plaintiff Thomas Oliver *repeatedly* demonstrated in multiple court papers that defendant J. Michaud had violated several times— magically changed. The change was made so that his misleading and intimidation of plaintiff Thomas Oliver's attorneys—and their subsequent withdrawals—was no longer considered a crime under the new version of this law and defendant J. Michaud could not be prosecuted—which, of course, had he been, would have put a damper on the plans to appoint him judge.

92. Regarding the first rescheduling of the June 15, 2022, hearing in the RI case, the chief clerk, defendant Oates, stated in an email that the change was made "by Justice Taft-Carter." In another email

that was forwarded to plaintiff Thomas Oliver, however, defendant Taft-Carter provided conflicting information when she said, "As I understand it [defendant Smith's] request for a continuance was made through the clerk's office."  Defendant Smith wanted to change the hearing date, but its actual rescheduling was done in violation of due process and rules of procedure.  Deflection by defendants Oates and Taft-Carter against each other supports this allegation and points to a civil conspiracy between defendants Smith and Oates or defendants Smith and Taft-Carter or between all three and perhaps others.

93. On June 10, 2021, nearly two full months before the automatic stay terminated in plaintiff Thomas Oliver's bankruptcy, defendants Smith and Parent, through their agent, changed "ownership" of the property in violation of 11 U.S. Code § 362.  Plaintiff requests that judicial notice of this fact be taken.[11]  For defendants Smith and Parent to make such a bold maneuver, it stands to reason that they were informed of the fraudulent denial of the discharge of plaintiff Thomas Oliver's "debt" weeks before it even happened on August 4, 2021, and were thus told of the bankruptcy's predetermined outcome.

94. Events in the RI case have been conspiratorially driven in favor of defendants Smith and Parent.  Such events include, but are not limited to: a probable telephonic communication to move the original June 15, 2022, hearing because defendant Smith most likely forgot about it, coordination of issuing writs without submission of accompanying motions, creation of a docket that omits information, preventing plaintiff Thomas Oliver from having a virtual hearing, and allowing the case to continue in the Rhode Island Superior Court despite service being absent upon Plaintiff.

95. Since it is difficult to identify all the culprits in a conspiracy and equally challenging to uncover all the evidence, discovery will be crucial, particularly since Plaintiff cannot see the contents of anything that has been recorded—or has failed to have been recorded—in the court "docket" or the further conspiratorial roles of defendants Hart and M. Michaud beyond what has already been alleged.

96. As a direct and proximate result of the civil conspiracy among the defendants and certain others, plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma

---

[11] "In addition, the [c]ourt may 'take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned.'" *Id.* (quoting *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017))." *Economan v. Cockrell*, Case No. 1:20-CV-32, 11 (N.D. Ind. Nov. 23, 2020)

Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

97. Defendants Parent, Smith, J. Michaud, M. Michaud, and Hart severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages of said interest and penalties plus $1,500 per month beginning April 2022 and to plaintiff Norma Oliver for approximately $198,377 as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table. Because FL Stat. § 768.72 also allows for punitive damages when a defendant is "personally guilty of intentional misconduct or gross negligence" and because a conspiracy by its very nature requires intentional misconduct, Plaintiff seeks punitive damages in the amount of $250,000 against defendants Parent, Smith, J. Michaud, M. Michaud, and Hart. The remaining defendants are also liable to Plaintiff who seeks declaratory and/or injunctive relief against them as reiterated and expounded in those paragraphs, which, along with the table, cover the specific relief claimed against each defendant.

### COUNT THIRTEEN: LIABILITY PURSUANT TO 42 U.S.C. § 1983

98. This count is against defendants Parent, Smith, Oates, Taft-Carter, Thompson, Keegan, J. Michaud, and Abreau (the "Count 13 Defendants").

99. The Count 13 Defendants violated the civil rights of Plaintiff while acting under color of "statute, ordinance, regulation, custom" when:

- defendant Abreau wrongly and corruptly vacated the original legitimate default judgment awarded to plaintiff Thomas Oliver based upon the lies and misinformation of defendant J. Michaud, who conspired with her to achieve this goal, thus violating due process

- defendant Smith conspired with defendants Thompson and Keegan, which resulted in the latter two issuing writs against the property—contrary to the ruling in *Dionne*—thus violating due process

- defendant clerks Oates, Thompson, and/or Keegan failed to record properly in the docket events in the RI case—a basic duty of a clerk—raising the concern about how much of the RI case has been short-circuited and, furthermore, preventing Plaintiff from ascertaining what is really happening, thus violating due process

- the chief clerk, defendant Oates, and the judge, defendant Taft-Carter, provided plaintiff

Thomas Oliver with conflicting information regarding the first rescheduling of the June 15, 2022, hearing, with each blaming the other for the rescheduling and that hearing ultimately not being held, thus violating due process

- plaintiff Thomas Oliver was prevented from having a virtual hearing on his motion to dismiss the RI case because, according to the judge, defendant Taft-Carter, the "protocol in effect" requires *pro se* litigants to have in-person hearings, but it allows virtual hearings to litigants represented by counsel, which is a clear act of discrimination against a class, i.e., the class of *pro se* litigants, thus violating equal protection

- defendant Smith conspired with defendant clerks Oates, Thompson, and/or Keegan and/or defendant Taft-Carter to move the June 15, 2022, hearing, most likely via a simple phone call and in clear violation of the rules of procedure and the rules of professional conduct, thus violating due process

- defendants Smith and Parent did not furnish adequate security to protect the plaintiff's interest nor did they make a specific factual showing before a neutral officer or magistrate, not a clerk or other such functionary, of probable cause to believe that they are entitled to the relief requested, but instead conspired with court administrative personnel in order to seize the property, thus violating due process

- the property was taken because of the actions of the Count 13 Defendants, despite plaintiff Thomas Oliver not yet being heard in the RI case, thus violating due process

100.    Plaintiff Thomas Oliver made the Count 13 Defendants, except for defendants J. Michaud and Abreau, aware on many occasions that due process rights were being abridged, that the foreign judgment was fraudulent, that his income met the definition of extreme poverty, that the property did not even belong to him, and that he was on the verge of homelessness due to their improper conduct.  By proceeding anyway, the defendants in this paragraph acted with reckless, willful, and wanton misconduct.

101.    Footnote 5 makes clear that "state officials in transferring possession of property" can "implicate due process," which the relevant defendants who are employed in the Rhode Island Superior Court—by their acts—have certainly done.  Defendant Abreau, who is employed in the Massachusetts court system, has also implicated due process by her acts.

102.    For the reasons given heretofore in this complaint, the Count 13 Defendants have deprived Plaintiff of the right of due process guaranteed under the Due Process Clause and the right of equal protection guaranteed under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, which renders the Count 13 Defendants liable under 42 U.S.C. § 1983.

103.    As a direct and proximate result of the Count 13 Defendants' actions and liability pursuant to 42 U.S.C. § 1983, plaintiff Thomas Oliver has been injured in his business/employment in the

amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B"). Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

104.    The Count 13 Defendants are thus liable to Plaintiff for violation of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Plaintiff Thomas Oliver seeks compensatory damages in the amount of said interest and penalties plus $1,500 per month beginning April 2022 and plaintiff Norma Oliver seeks compensatory damages in the amount of approximately $198,377 against defendants Parent, Smith, and J. Michaud, who are severally and jointly liable, for their violations of said clauses that they violated when they conspired (Parent indirectly through the other two) with court personnel to achieve their illicit goals. The remaining Count 13 Defendants violated those same clauses when defendant Abreau illegally vacated a legitimate judgment and when all other Count 13 Defendants failed to maintain an accurate court docket, provided conflicting scheduling information, issued writs improperly, prevented a virtual hearing, and failed to take adequate precautions to prevent title of the property from being corrupted (i.e., the property was "sold" in total disregard of governing law and the aforementioned constitutional provisions). Plaintiff also seeks an award of punitive damages in the amount of $150,000 in order to punish defendants Parent, J. Michaud, and Smith $50,000 per person for their reckless, willful, and wanton misconduct with respect to disregarding the plaintiffs' right to due process and violating such right and to deter such reckless, willful, and wanton misconduct in the future. The remaining Count 13 Defendants are also liable to Plaintiff who seeks declaratory and/or injunctive relief against them as reiterated and expounded in paragraphs 141 and 142, which, along with the accompanying table, cover the specific relief claimed against each defendant.[12]

### COUNT FOURTEEN: VIOLATION OF 18 U.S. CODE § 1962(b), RICO

105.    This count is against defendant Joseph L. Michaud (the "Count 14 Defendant").

---

[12] After 1996, § 1983 suits for declaratory relief are still valid against judges in their individual capacity.

106.    An association-in-fact enterprise created by the Count 14 Defendant is engaged in and affects interstate commerce.

107.    The Count 14 Defendant acquired and maintains interests in and control of the association-in-fact enterprise through a pattern of racketeering activity.  Specifically, he orchestrated the components of it by coordinating/conspiring with others in order to obtain the original fraudulent judgment in Massachusetts through political connections, by contacting the U.S. Trustee's Office and interfering with the discharge of the fraudulent debt he helped create, by threatening and intimidating the tenant of the property by leaving notes and/or notices on the premises, and by causing the conversion of rent money while likely using the U.S. mail to accomplish much of his scheme—all of which affect interstate commerce.

108.    The following racketeering activities attributed to the Count 14 Defendant:

- 18 U.S. Code § 1341 (when he used the U.S. mail to conduct his fraudulent enterprise)
- 18 U.S. Code § 1512(c)(2) (when he corruptly obstructed, influenced, and/or impeded the original Massachusetts case and plaintiff Thomas Oliver's discharge of "debt")
- 18 U.S. Code § 1951 (when he affected commerce via civil theft of rent payments for the property and fraudulently transferred "ownership" of it and/or conspired to do so)
- 18 U.S. Code § 1956 (when he laundered monetary instruments related to the property)
- 18 U.S. Code § 1957 (when he engaged in or enabled monetary transactions related to the property, which was derived from unlawful activity)
- fraud connected with a case under title 11 (when he contacted the U.S. Trustee's Office in order to block the discharge of the fraudulent debt he helped create against plaintiff Thomas Oliver)

constitute a pattern of racketeering activity pursuant to 18 U.S. Code § 1961(5)—all of which caused plaintiff Thomas Oliver to expend significant time and other resources to fight an array of legal battles and arduously and painstakingly address the ramifications of such battles.

109.    The Count 14 Defendant has directly and indirectly acquired and maintains interests in and control of the association-in-fact enterprise through the pattern of racketeering activity in violation of 18 U.S. Code § 1962(b).

110.    As a direct and proximate result of the Count 14 Defendant's racketeering activities and violations of 18 U.S. Code § 1962(b)—acquisition or maintenance of an interest in or control of the

association-in-fact enterprise—and his malicious, willful, and wanton misconduct, plaintiff Thomas Oliver has been forced to litigate at least five other cases, which have resulted in expenses, *significant* time expenditure on the order of what is projected to be 13,000 total hours, and tremendous stress, and which have occurred since establishment of the association-in-fact enterprise.  Time spent working on those cases was time that could not be used to generate income, truly resulting in a net income loss.

111.    The Count 14 Defendant is thus liable to plaintiff Thomas Oliver for compensatory damages in the amount of $50 per hour trebled to $150, for a total of $1,950,000, plus expenses of $1,000 trebled to $3,000.  Plaintiff also seeks punitive damages in the amount of $50,000 against the Count 14 Defendant to deter such malicious, willful, and wanton misconduct in the future as reiterated and expounded in paragraphs 141 and 142 and as shown in the accompanying table.

### COUNT FIFTEEN: VIOLATION OF 18 U.S. CODE § 1962(c), RICO

112.    This count is against defendants J. Michaud, Hart, and Smith (the "Count 15 Defendants").

113.    The Washington County Superior Court is an enterprise engaged in and whose activities affect interstate commerce.  The Count 15 Defendants are associated with the enterprise.

114.    The Count 15 Defendants agreed to and did conduct and participate in the affairs of the enterprise through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.  Specifically, they are responsible for the following racketeering activities:

- 18 U.S. Code § 1341 (when they used the U.S. mail to conduct their fraudulent activity, with one known parcel dated February 25, 2020, and another dated March 25, 2021, being sent by defendant Smith to plaintiff Norma Oliver in Florida, thereby constituting a pattern of racketeering activity)
- 18 U.S. Code § 1512(c)(2) (when defendant J. Michaud corruptly obstructed, influenced, and/or impeded the original Massachusetts case and plaintiff Thomas Oliver's discharge of "debt")
- 18 U.S. Code § 1951 (when they performed acts that affected commerce via civil theft of rent payments for the property and fraudulently transferred "ownership" of it and/or conspired to do so through the enterprise)
- 18 U.S. Code § 1956 (when they laundered monetary instruments related to the property)
- 18 U.S. Code § 1957 (when they engaged in or enabled monetary transactions related to the property, which was derived from unlawful activity)

- fraud connected with a case under title 11 (when defendant J. Michaud contacted the U.S. Trustee's Office in order to block the discharge of the fraudulent debt he helped create against plaintiff Thomas Oliver)

and similar activities described in earlier counts, such as COUNT FIVE.

115.    Pursuant to and in furtherance of their fraudulent scheme, the Count 15 Defendants committed multiple related acts of racketeering as shown in paragraph 114.

116.    The acts set forth in this count constitute a pattern of racketeering activity—with the conversion/civil theft by the Count 15 Defendants of the rent payments for the property being a pattern in and of itself since it has been ongoing every month beginning in April 2022—pursuant to 18 U.S. Code § 1961(5).

117.    The Count 15 Defendants have directly and indirectly conducted and participated in the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S. Code § 1962(c).

118.    As a direct and proximate result of the Count 15 Defendants' racketeering activities and violations of 18 U.S. Code § 1962(c), plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

119.    The Count 15 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages in the amount of said interest and penalties trebled to $860,183.76 plus $1,500 per month trebled to $3,385,702.08, and to plaintiff Norma Oliver in the amount of the estimated equity of her loss of property trebled to $595,131.  Plaintiff also seeks punitive damages in the amount of $150,000 against the Count 15 Defendants as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

**COUNT SIXTEEN: VIOLATION OF 18 U.S. CODE § 1962(d), RICO**

120.     This count is against defendants Parent and M. Michaud (the "Count 16 Defendants").

121.     The Count 16 Defendants agreed to the overall objective of the conspiracy and conspired to violate 18 U.S. Code § 1962(c). Specifically, defendant Parent agreed to have defendant Smith represent her in the scheme to enforce the fraudulent judgment. She also is responsible for several predicate acts: using the U.S. mail to communicate and/or transact with defendant Smith and/or J./M. Michaud in the process of defrauding Plaintiff, and "buying" and "selling" the property in which she has interfered with commerce, laundered money, and engaged in monetary transactions in violation of 18 U.S. Code sections 1341, 1951, 1956, and 1957, respectively. Defendant M. Michaud, as alleged trustee of the FUBAR Realty Trust, agreed to "purchase" the property from defendant Parent. He also is responsible for several predicate acts: using the U.S. mail to communicate and/or transact with defendant Parent and/or Hart and/or J. Michaud in the process of defrauding Plaintiff, and "buying" the property in which he has interfered with commerce, laundered money, and engaged in monetary transactions in violation of 18 U.S. Code sections 1341, 1951, 1956, and 1957, respectively. The Count 16 Defendants intended "to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."[13]

122.     The Count 16 Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the affairs of the enterprise through a pattern of racketeering activity. The Count 16 Defendants knew that their acts contributed to a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S. Code § 1962(c), in violation of 18 U.S. Code § 1962(d).

123.     As a direct and proximate result of the Count 16 Defendants' conspiracy to violate 18 U.S. Code § 1962(c) and their overt acts taken in furtherance of that conspiracy in violation of 18 U.S. Code § 1962(d), plaintiff Thomas Oliver has been injured in his business/employment in the amount of $1,500 monthly beginning April 2022, the calculations for which are shown in exhibit "A," and plaintiff

---

[13] *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Norma Oliver has been injured in the amount of approximately $198,377, the current estimated equity she has in the property based on the average value of it from two sources (see exhibit "B").  Plaintiff Thomas Oliver has also been forced to liquidate his retirement account in order to survive and will be subject to approximately $286,727.92 in interest and penalties.

124.    The Count 16 Defendants severally and jointly are thus liable to plaintiff Thomas Oliver for compensatory damages in the amount of said interest and penalties trebled to $860,183.76 plus $1,500 per month trebled to $3,385,702.08, and to plaintiff Norma Oliver in the amount of the estimated equity she has in the property trebled to $595,131.  Plaintiff also seeks punitive damages in the amount of $100,000 against the Count 16 Defendants as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.

## COUNT SEVENTEEN: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

125.    This count is against all defendants.

126.    The conduct of defendants J. Michaud, Parent, and Smith has been beyond outrageous since the true beginning of this legal nightmare—from violating ethical standards, rules of procedure, and civil laws to committing various crimes against Plaintiff that even involve a conspiracy network reaching across the nation.  Most of the offenses can be found at www.stloiyf.com/evidence/letter.htm.

127.    Thus far, Plaintiff has had to spend more than 11,000 painstaking hours on litigation related to this matter because of the defendants' actions.  The defendants have intentionally inflicted—if not at least negligently inflicted—emotional and financial distress upon Plaintiff as a result of their tortious acts during the creation of the fraudulent debt by defendants J. Michaud, Parent, and Abreau and the attempted collection of it by defendants Hart, Smith, Parent, J. Michaud, and M. Michaud, and Plaintiff has suffered a great deal.  The date emotional distress was first inflicted was after the conspiratorial actions by defendants J. Michaud and Abreau on or about September 8, 2014, but the infliction of emotional distress continues to present day.

128.    Plaintiff has been under constant oppression by the defendants and various others, and

38

although complaints have been filed with several oversight agencies, nothing remedial has been done, which has further increased stress levels.  Additionally, plaintiff Thomas Oliver has been under tremendous emotional and financial distress due to the loss of the overwhelming majority of his income because of the defendants' actions, which are in violation of law as shown in the preceding counts.

129.    Defendants Smith and Abreau have caused plaintiff Norma Oliver distress on several occasions: for example, via their contact with her in July or August and again in October or November of 2016 (by Abreau), and shortly after February 25, 2020, and March 25, 2021 (by Smith), but also for an extended time after the contact and at other times throughout litigation, particularly after she learned that her property was seized.  At one point, she said to plaintiff Thomas Oliver regarding the theft of her property, "That's just not right.  How can they do that?!"

130.    The defendants acted with malice or reckless indifference and committed extreme and outrageous acts, such as fraud to the highest degree.  Specifically, they:

- know the judgment in Massachusetts was obtained fraudulently—resulting in the fraudulent debt (all defendants except Sylvester and Robinson*)

- know plaintiff Norma Oliver owned the property and know she owes no debt/financial obligation to them (all defendants except Abreau, Sylvester, and Robinson*)

- know plaintiff Thomas Oliver has been driven well into extreme poverty and has been forced to be put on the Lifeline program, SNAP/food stamps, and state medical assistance because of their actions (all defendants except Hart, Abreau, Sylvester, and Robinson*)

yet defendants Parent, Smith, J. Michaud, M. Michaud, and Hart proceeded with seizing the property anyway.  Those defendants versed in law who did the most appalling acts—Abreau, Smith, J. Michaud, Hart—must have known they were violating several laws, but even if they were ignorant of existing relevant law, they were made aware of their transgressions via the demand letter plaintiff Thomas Oliver sent them and via filings he submitted into the RI case, which defendant Smith was served.  Moreover, for defendant J. Michaud and/or M. Michaud to come from out of state and leave threatening notes and/or notices at the property when he or they are not even a party to the RI case, he or they were clearly acting maliciously.  Note that defendant J. Michaud is the former corrupt lawyer—now a judge—who played a major role in creating the fraudulent debt.  *Those who *may* not know are indicated in parenthesis above.

131.     Defendants Keegan and Thompson issued writs against the property contrary to federal case law and due process.  Other than Defendants Smith and Parent, they were directly responsible for some of the most deleterious effects of the RI case, namely, blessing defendant Smith's and Parent's illegal seizure of the property, thereby causing great financial and emotional distress to Plaintiff.  These two particular clerks and/or defendant Oates failed to keep an accurate record and did not ensure Plaintiffs were served process or knew about the "sale" of the property, which caused even more emotional strain upon the plaintiffs, especially once they learned title to the property had been corrupted.

132.     Regarding rescheduling of the June 15, 2022, hearing date, defendant Oates' conspiracy with defendants Smith and/or Taft-Carter and their lack of following rules of procedure by allowing defendant Smith to postpone the date via a verbal request—without a properly submitted motion—shows total disregard of Plaintiff's right to due process and inflicted emotional distress upon the plaintiffs.

133.     Defendant Taft-Carter also discriminated against plaintiff Thomas Oliver, who is a *pro se* litigant, by preventing him from having a virtual hearing on his motion to dismiss the RI case.  She and defendant Oates cast blame onto each other regarding the rescheduling of the June 15, 2022, hearing. Under her purview, defendant Oates and possibly other defendant clerks were remiss in performing their duties.  Defendant Taft-Carter also negligently caused distress upon Plaintiffs.

134.     Defendants Sylvester and Robinson instructed and caused Anthony Tortolano to redirect rent payments for the property to an entity yet unknown to Plaintiff.  They were negligent with respect to checking whether a court order existed that allowed garnishment of plaintiff Thomas Oliver's income. They also negligently forced plaintiff Thomas Oliver into extreme poverty, with him now living on approximately -$497 in monthly income.  By their negligence, they have caused him significant financial and emotional distress.

135.     Because of the defendants' actions, plaintiff Thomas Oliver has been forced to liquidate his retirement account in order to meet daily living expenses.  As a result, penalties and taxes will be due, which he cannot afford, and yet more litigation will likely be generated—possibly a *seventh* case at their hands.  This is causing him tremendous distress.

136.     Plaintiff Thomas Oliver has never missed a payment on anything—until April 2022.  The defendants' actions have forced him to stop paying the mortgage, taxes, insurance, and condo fees on the property.  His credit score was 818 before this ordeal began in 2005 but has likely plummeted or will plummet because of his forced default on the mortgage and bankruptcy and related legal problems.  Plaintiff Norma Oliver's credit score will also likely be negatively affected for being the "responsible" party accountable for the fraudulent debt since the property was solely in her name when it was seized.

137.     As stated in several counts, Defendant failed to use proper care at many points in time since 2005 and was reckless with regard to giving notice, maintaining docket fidelity, preventing excessive garnishment, issuing writs, attaching the right property, and whatnot.  Discovery may reveal additional evidence that proves more of the defendants' actions were done intentionally to inflict emotional distress upon Plaintiff.  As a result of the defendants' conduct, Plaintiff has suffered severe emotional and financial distress.

138.     Defendants Parent, Smith, J. Michaud, M. Michaud, and Hart cumulatively make more than $500,000.00 per year but quite likely have income and/or assets that exceed $3,000,000.00.  As such, punitive damages of less than six figures will not be appropriate since the financial impact upon them will be insignificant.

139.     As a direct and proximate result of the defendants' actions described in this count and throughout this complaint, Plaintiff has been negatively impacted with regard to standard of living, financial reserve, emotional distress, time expenditure, and mental/physical well-being.

140.     Defendants Parent, Smith, J. Michaud, M. Michaud, Hart, Sylvester, and Robinson severally and jointly are thus liable to Plaintiff for compensatory damages in an amount to be determined at trial.  Because of the deliberate and outrageous conduct of defendants Parent, Smith, J. Michaud, M. Michaud, and Hart, Plaintiff also seeks punitive damages in the amount of $50,000 against each of them as reiterated and expounded in paragraphs 141 and 142 and in the accompanying table.  The remaining defendants are also liable to Plaintiff who seeks declaratory and/or injunctive relief against them as reiterated and expounded in those paragraphs, which, along with the table, cover the specific relief

claimed against each defendant.

## DEMAND FOR JUDGMENT

141.    WHEREFORE, Plaintiff seeks declaratory and/or injunctive relief pursuant to RI Gen. Law § 9-30-1 et seq., FL Stat. chapter 86, and 42 U.S.C. § 1983 against defendant Taft-Carter by directing her to abide by the law and Constitution, to nullify any title/deed to the property post-2020, and to forever bar co-defendants J. Michaud, M. Michaud, Parent, Smith, and Hart and their heirs, successors, and assigns from bringing any legal proceeding against the property with regard to collection of alleged debts attributed to plaintiff Thomas Oliver.  Plaintiff also seeks declaratory and/or injunctive relief against defendants Oates, Thompson, and Keegan so that they be enjoined from issuing writs and directed to maintain court dockets and perform all tasks in accordance with their official duties.  He also seeks declaratory and/or injunctive relief against defendant Abreau so that she be enjoined from violating rules of procedure, civil and criminal law, and the U.S. Constitution.

142.    Lastly, Plaintiff seeks compensatory and punitive damages as set forth in the following table, together with prejudgment interest at the prevailing rate set by law, court costs, fees, penalties imposed on Plaintiff, and any other relief or compensation deemed appropriate.  In the alternative to declaratory and/or injunctive relief against defendant Taft-Carter, the rightmost two columns of compensatory damages in the table are applicable.  Under compensatory damages, column 1 represents the $1,500 monthly rent or its triple, as applicable.  Column 2 represents the approximate total taxes and interest due to early withdrawal of plaintiff Thomas Oliver's retirement account, with column 3 being its triple.  Column 4 represents the estimated equity plaintiff Norma Oliver has in the property ($198,377) combined with the 30-year loss of monthly rent ($1,128,567.36), with column 5 being its triple.[14] Amounts in parenthesis in the table supersede the default values given at the top of it.

---

[14] Courts have ruled that punitive damages are available under RICO.  See *Com-Tech Assoc. v. Computer Assoc. Int'l*, 753 E Supp. 1078, 1079 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) (holding that claim for punitive damages could be asserted in civil action under RICO, even though treble damages are available).  See also *Sea Salt, LLC v. Bellerose, No. 2:18-cv-00413-JAW*, 10 (D. Me. Jun. 9, 2021) (where the court reasoned that "compensatory damages in the amount of $1,500,000, treble damages under the RICO Act, and punitive damages in the amount of $3,000,000" are viable).

| | | Compensatory | | | | Punitive |
|---|---|---|---|---|---|---|
| | $1,500/mo | $286,727.92 | $860,183.76 | $1,326,944.36 | $3,980,833.08 | $250,000 |
| **Count 1** | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson<br>($4,500/mo) | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson | | | | |
| **Count 2** | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson | | | | |
| **Count 3** | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | | | |
| **Count 4** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | |
| **Count 5** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | |
| **Count 6** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart |
| **Count 7** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart |
| **Count 8** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | |
| **Count 9** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson<br>($350,000) |
| **Count 10** | | Parent<br>Smith | | Parent<br>Smith | | Parent<br>Smith<br>($54,691) |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Count 11** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | J. Michaud<br>M. Michaud<br>Parent<br>Smith | | |
| **Count 12** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart |
| **Count 13** | | J. Michaud<br>Smith<br>Parent | | J. Michaud<br>Smith<br>Parent | | J. Michaud<br>Smith<br>Parent<br>($150,000) |
| **Count 14** | | | | | J. Michaud<br>($1,953,000) | J. Michaud<br>($50,000) |
| **Count 15** | | | J. Michaud<br>Smith<br>Hart | | J. Michaud<br>Smith<br>Hart | J. Michaud<br>Smith<br>Hart<br>($150,000) |
| **Count 16** | | | H. Michaud<br>Parent | | H. Michaud<br>Parent | H. Michaud<br>Parent<br>($100,000) |
| **Count 17** | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson<br>(TBD) | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart<br>Sylvester<br>Robinson<br>(TBD) | | J. Michaud<br>M. Michaud<br>Parent<br>Smith<br>Hart |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues raised in this complaint.

September 5, 2022

Norma Oliver, *pro se*
6920 Bernadean Blvd.
Punta Gorda, FL 33982
401-363-5570

Thomas Oliver, *pro se*
6920 Bernadean Blvd.
Punta Gorda, FL 33982
401-835-3035
tomscotto@gmail.com

When the legislative or executive functionaries act unconstitutionally, they are responsible to the people in their elective capacity.  The exemption of the judges from that is quite dangerous enough.  I know no safe depository of the ultimate powers of the society, but the people themselves. - **Thomas Jefferson**